[Cite as *State v. Jackson*, 2016-Ohio-8144.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103957**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEMETRIUS JACKSON

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-598188-A

**BEFORE:** E.A. Gallagher, P.J., Boyle, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 15, 2016

**ATTORNEY FOR APPELLANT**

Jonathan N. Garver
The Browhoist Building
4403 St. Clair Avenue
Cleveland, Ohio 44103


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Sherrie S. Royster
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, P.J.:

{¶1} Defendant-appellant Demetrius Jackson appeals his convictions for rape, gross sexual imposition and kidnapping in the Cuyahoga County Court of Common Pleas. For the following reasons, we reverse and remand.

**Factual and Procedural Background**

{¶2} Appellant was charged by a Cuyahoga County Grand Jury with three counts of rape, gross sexual imposition, importuning with a prior conviction for a sexually or child victim oriented offense, felonious assault and kidnapping with a sexual motivation specification. Each of these crimes were alleged to have been committed against a 14-year old female ("C.H.").

{¶3} The case proceeded to a bench trial where C.H. testified that, on August 5, 2015, she went to an older sister's home in Cleveland, Ohio and was interacting with her young relatives while two of her sisters were on the porch drinking with the appellant. C.H. testified that she did not know the appellant and that both of her sisters were intoxicated. Late that night the occupant of the home, C.H.'s sister N.J.,[1] told C.H. to go upstairs and lay down with N.J.'s two children, ages 7 and 1. C.H. had fallen asleep in a bedroom with the two children and was awakened by the appellant who told her that her sister, S.H., had told him to come lay with her. C.H. rebuffed his advances and told him to leave the room which he did and after which he went downstairs but returned and repeated that her sister told him to go upstairs and lay with her. C.H. herself went

---

[1] N.J. identified herself as the victim's "god-sister."

downstairs, as did the appellant, and found both of her sisters to be asleep on a couch. At that point the appellant laid himself on the living room floor and C.H. returned upstairs to a bedroom.

{¶4} C.H. testified that appellant returned to the upstairs bedroom and asked her to allow him to perform oral sex on her. When she refused, appellant stated "I'll give you $200 a week if you don't say anything." Appellant then "ripped" C.H.'s underwear off of her, proceeded to perform oral sex on her and when she resisted, he choked her and said "let me just do this." The appellant then inserted his fingers into her vagina and later, his penis.

{¶5} At some point appellant stopped his assault which gave C.H. an opportunity to grab her cellular telephone from a windowsill and run, without shoes or underwear, to a family member's home approximately eight houses away from where Cleveland police were called. C.H. was transported to University Hospitals by EMS where she was examined, treated and released.

{¶6} N.J., the occupant of the home where these events transpired, testified that on the night in question her sister S.H. brought appellant to the house after she went to the store to purchase alcohol. N.J. testified that she had fallen asleep and was awakened, on the couch, by her brother-in-law, K.F., who informed her that C.H. was at his home down the street and that she had been raped. N.J. went to the house of K.F. where she found the victim "hysterically crying * * * she was screaming 'he raped me, he raped me * * *.'"

{¶7} Kathleen Hackett, the sexual assault nurse examiner who interacted and examined C.H. at U.H. Rainbow Babies and Childrens Hospital read the victim's own words from the triage notes that echoed C.H.'s testimony but for the fact that C.H. did not report to her any digital penetration and the nurse noted a mark on C.H.'s neck.

{¶8} Laura Evans, a DNA analyst at the Cuyahoga County Medical Examiner's Office testified that testing of the victim's vaginal swabs revealed the presence of seminal material but no DNA profile foreign to the victim was found. The DNA analyst testified that sometimes the victim's DNA can mask the another person's DNA. She testified that Jackson could not be excluded as a possible contributor to the DNA profile from a dried stain from the victim's left ear. She further testified that testing done of the penile swabs taken from Jackson could not exclude C.H. as a possible contributor.

{¶9} Holly Mack, an employee of the Cuyahoga County Division of Children and Family Services testified that she is the child advocate in the Cuyahoga County jail and "works" directly with incarcerated parents as well as alleged perpetrators that are in the jail.

{¶10} Over objection, Mack testified her protocol is that she identifies herself, advises them they have been named as a perpetrator and what the allegations are that have been levied against them and "I also let them know that anything they tell me can be subpoenaed by the courts."

{¶11} Appellant testified on his own behalf. He testified, however, only because the court admitted the testimony concerning what was allegedly said to the child

advocate, over objection. Appellant claimed that the sexual activity with the victim was consensual. He maintained that he had only a few swigs of alcohol and smoked two blunts of marijuana on the night in question. He testified that everyone, including the victim, was drinking and that he thought the victim was at least 18 years old. He testified that the victim started kissing him, that they performed oral sex on each other and that the victim asked him to pay her for same. He denied choking the victim or in penetrating her in any fashion. He also testified to the limited mobility of his right arm.

{¶12} At the close of the state's case the trial court dismissed the importuning and felonious assault charges. The trial court found appellant guilty of two counts of rape, gross sexual imposition and kidnapping with a sexual motivation specification. The trial court found appellant not guilty of the third count of rape (cunnilingus).

{¶13} The trial court found the kidnapping count to be an allied offense to the rape and gross sexual imposition counts and merged the kidnapping count with those offenses. The state elected to proceed to sentencing on the two rape counts and the kidnapping count. The trial court imposed prison terms of 11 years on each of the three counts and ordered the sentences to run concurrently.

**Law and Analysis**

**I. Appellant's Statements Made to the Child Advocate**

{¶14} In his first assignment of error, appellant argues that his Fifth and Sixth Amendment rights were violated by the introduction of the child advocate's testimony regarding her questioning of appellant after his arraignment, outside the presence of

counsel and without providing him with *Miranda* warnings. Appellant's objection to the child advocate's testimony was overruled by the trial court.

{¶15} Pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), statements stemming from custodial interrogation of the defendant must be suppressed unless the defendant had been informed of his Fifth and Sixth Amendment rights before being questioned. *Id.* *Miranda* defines "custodial interrogations" as any "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444.

{¶16} The state argues that the child advocate did not quality as an agent of law enforcement and that a custodial interrogation did not occur. We disagree.

## II. The Child Advocate functioned as an Agent of Law Enforcement

{¶17} Miranda requirements do not apply to admissions made to persons who are not officers of the law or their agents. *State v. Clark*, 8th Dist. Cuyahoga No. 44015, 1982 Ohio App. LEXIS 11323 (Apr. 29, 1982), citing *State v. Watson*, 28 Ohio St.2d 15, 275 N.E.2d 153 (1971). In *State v. Jones*, 8th Dist. Cuyahoga No. 83481, 2004-Ohio-5205, this court acknowledged that "in certain circumstances a social worker may be required to provide Miranda warnings, i.e., when acting as an agent of the police." *Id.* at ¶ 40.

{¶18} On the facts before us we find the child advocate to have been acting as an agent of law enforcement when she interrogated appellant. Pursuant *State v. Bolan*, 27 Ohio St.2d 15, 271 N.E.2d 839 (1971), in order to qualify as an agent of law enforcement, the agent must act under the direction or control of a law enforcement agency. *Id.* at 18.

This requirement is satisfied in this instance due to the formal procedure established by CCDCFS and local law enforcement for routinely conducting interrogations of defendants without providing Miranda warnings. These interrogations are proceeding under the direction, and for the benefit, of law enforcement pursuant to a "memorandum of understanding" required by Ohio law. R.C. 2151.421(F), (J).

{¶19} The record reflects that CCDCFS has social workers assigned to the Cuyahoga County jail as a child advocate. The child advocate testified that one of her primary job duties at the jail is to interview alleged perpetrators connected to abuse and neglect cases. These interviews occur in the county jail while defendants, such as appellant, are awaiting trial. As this case evidences, those interviews are occurring after counsel has been appointed for defendants at arraignment, without any notification to said counsel and without obtaining any waiver of the defendant's Fifth or Sixth Amendment rights. The child advocate does not administer *Miranda* warnings. It is absolutely undisputed that if sworn law enforcement officers conducted interviews in this manner, the practice would violate defendants' Fifth and Sixth Amendment rights.

{¶20} The child advocate is required by Ohio law not only to conduct an investigation in cooperation with law enforcement but also to submit a report of the advocate's investigation, in writing, to law enforcement. R.C. 2151.421(F). The aforementioned "memorandum of understanding" required by R.C. 2151.421(F), (J) formalizes and structures the investigatory relationship between CCDCFS and the law

enforcement agency. The child advocate in this instance took notes of her interview with appellant and recorded the interview in CCDCFS's computer system.

{¶21} We can find no legitimate purpose for the child advocate's interview of appellant in this case other than to directly assist the investigation of law enforcement pursuant to R.C. 2151.421(F). Indeed, it is a struggle to conceptualize hypothetical instances where a CCDCFS social worker could have a legitimate reason to interview an incarcerated defendant awaiting trial for the purpose of aiding a child victim. To the extent that such instances exist, it is evident from the record that this case is not one of those instances. The record reflects that the 14-year old victim was able to communicate the relevant facts to CCDCFS and law enforcement and that there was no familial relationship between the child victim and defendant. The dissent offers absolutely no explanation of what alternative, legitimate purpose the interview might have served. This is because there simply is no legitimate justification for the interview other than to assist the investigation of law enforcement pursuant to the formalized relationship under R.C. 2151.421(F), (J).

{¶22} While the child advocate may have been performing her customary duties as an investigator for CCDCFS, it is problematic to this court that the advocate's customary duties are designed to routinely violate the constitutional rights of defendants. This case reveals that law enforcement and CCDCFS have a systematic procedure in place to interview jailed defendants in a manner that blatantly attempts to evade the constrictions of the Fifth and Sixth Amendments. Consistent with this arrangement, the child

advocate in this instance conducted an unconstitutional custodial interrogation of appellant, documented and shared the results with law enforcement and testified against appellant at trial regarding the admissions he made during the interrogation. We can only conclude that the practice worked as intended. The child advocate functioned as an agent of law enforcement and appellant's Fifth Amendment rights were violated when he was interrogated without being Mirandized. As the interview would have been illegal had it been conducted by law enforcement we cannot see how it becomes legal when it is accomplished by a separate state actor who conducts the interrogation under the direction of a formal agreement with law enforcement and who is legally required to forward the collected information to law enforcement.

### III. Custodial Interrogation

{¶23} We also find that a custodial interrogation occured in this instance. *Howes v. Fields*, 565 U.S. 499, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012), is instructive on this issue. In *Howes* the United States Supreme Court stated: "imprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*." *Id.* at 1190. However, relevant to the present case *Howes* explained:

> There are at least three strong grounds for this conclusion. First, questioning a person who is already serving a prison term does not generally involve the shock that very often accompanies arrest. In the paradigmatic Miranda situation--a person is arrested in his home or on the street and whisked to a police station for questioning--detention represents a sharp and ominous change, and the shock may give rise to coercive pressures. A person who is "cut off from his normal life and companions," *Shatzer*, supra, at 106, 130 S. Ct. at 1219, 175 L. Ed. 2d at 1051, and abruptly transported from the street into a "police-dominated atmosphere," *Miranda*, 384 U.S., at 456, 86 S. Ct. 1602, 16 L. Ed. 2d 694, may feel coerced into answering questions.

By contrast, when a person who is already serving a term of imprisonment is questioned, there is usually no such change. "Interrogated suspects who have previously been convicted of crime live in prison." *Shatzer*, 559 U.S., at 113, 130 S. Ct. at 1220, 175 L. Ed. 2d at 1054. For a person serving a term of incarceration, we reasoned in *Shatzer*, the ordinary restrictions of prison life, while no doubt unpleasant, are expected and familiar and thus do not involve the same "inherently compelling pressures" that are often present when a suspect is yanked from familiar surroundings in the outside world and subjected to interrogation in a police station. 559 U.S., at 99, 130 S. Ct. at 1217, 175 L. Ed. 2d at 1050.

Second, a prisoner, unlike a person who has not been sentenced to a term of incarceration, is unlikely to be lured into speaking by a longing for prompt release. When a person is arrested and taken to a station house for interrogation, the person who is questioned may be pressured to speak by the hope that, after doing so, he will be allowed to leave and go home. On the other hand, when a prisoner is questioned, he knows that when the questioning ceases, he will remain under confinement. 559 U.S., at 124, n. 8, 130 S. Ct. at 1220-1221, 175 L. Ed. 2d at 1054-1055.

Third, a prisoner, unlike a person who has not been convicted and sentenced, knows that the law enforcement officers who question him probably lack the authority to affect the duration of his sentence. 559 U.S., at 113-114, 130 S. Ct. at 1220-1221, 175 L. Ed. 2d at 1054-1055. And "where the possibility of parole exists," the interrogating officers probably also lack the power to bring about an early release. *Ibid.* "When the suspect has no reason to think that the listeners have official power over him, it should not be assumed that his words are motivated by the reaction he expects from his listeners." *Perkins*, 496 U.S., at 297, 110 S. Ct. 2394, 110 L. Ed. 2d 243. Under such circumstances, there is little "basis for the assumption that a suspect . . . will feel compelled to speak by the fear of reprisal for remaining silent or in the hope of [a] more lenient treatment should he confess." 496 U.S., at 296-297, 110 S. Ct. 2394, 110 L. Ed. 2d 243.

In short, standard conditions of confinement and associated restrictions on freedom will not necessarily implicate the same interests that the Court sought to protect when it afforded special safeguards to persons subjected to custodial interrogation. Thus, service of a term of imprisonment, without more, is not enough to constitute Miranda custody.

*Id*. at 1190-1191.

**{¶24}** This analysis clearly distinguishes the situation faced by the defendant in *Howes*, who was questioned about pending charges while serving a prison term on an unrelated offense. Unlike *Howes*, appellant was questioned concerning pending charges while in custody at the county jail awaiting trial on said charges. In fact, each of the three above rationales identified in *Howes* weigh in favor of appellant's argument that he was subjected to a custodial interrogation in this instance.

**{¶25}** *Howes* set forth the appropriate analysis for determining if a person is in custody for *Miranda* purposes:

> In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave. In considering a suspect's freedom of movement, a court must consider the totality of the circumstances, including the following relevant factors: (1) the location of the questioning, (2) its duration, (3) statements made during the interview, (4) the presence or absence of physical restraints during the questioning, and (5) the release of the interviewee at the end of the questioning. However, freedom of movement is not a solely determinative factor, and courts must consider whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in Miranda.

*Id*. at 1189-1190 (internal quotations and citation omitted).

{¶26} In this instance the child advocate from CCDCFS testified that one of her job duties is interviewing alleged perpetrators, such as appellant, regarding the allegations made against them while they are in custody at the Cuyahoga County jail. These interviews occur outside the defendant's housing unit within the jail. The child advocate testified that she identifies herself, informs the alleged perpetrators of what the allegations are against them and informs them that anything they tell her can be "subpoenaed by the courts." The child advocate stated that it is then up to the incarcerated person to continue with the interview or not. Within this protocol, the child advocate testified that she interviewed appellant on August 11, 2015 regarding the allegations that he had had oral and vaginal sex with a minor.

{¶27} The record establishes that a custodial interrogation occurred in this instance. Applying the above framework, (1) appellant was questioned while awaiting trial in the county jail, (2) we have no information on the duration of the questioning, (3) appellant admitted during the questioning to having oral sex with a minor, (4) implicit within the child advocate testimony was the fact that appellant was restrained during the interview if, as she described, she interviewed him outside his housing unit and (5) appellant was returned to his jail cell following the questioning. In addition to these factors, the three further considerations identified above by the Supreme Court in *Howes*, all weigh in favor of finding that the questioning of appellant, an individual charged with crimes and awaiting trial in jail, was a custodial interrogation.

**{¶28}** Therefore, we conclude that a custodial interrogation occurred here, it was conducted by an agent of law enforcement and appellant's Fifth Amendment rights were violated when the child advocate failed to administer *Miranda* warnings.

### IV. Appellant's Sixth Amendment Rights Were Also Violated

**{¶29}** We note that appellant's Sixth Amendment right to counsel was violated as well.  Appellant was arrested on August 5, 2015, arraigned and assigned an attorney on August 7, 2015 and interviewed outside the presence of his attorney and without *Miranda* warnings on August 11, 2015.   This is a plain violation of his Sixth Amendment right to counsel pursuant to the United States Supreme Court's decisions in *Montejo v. Louisiana*, 556 U.S. 778, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009), and *Massiah v. United States*, 377 U.S. 201, 204-205, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).   As *Montejo* makes clear, any custodial interrogation conducted by an agent of law enforcement after counsel is assigned at arraignment must be immediately precipitated by *Miranda* warnings and a valid waiver of counsel.   As neither occurred in this instance, we find that appellant's Sixth Amendment rights were also violated.

**{¶30}** Jackson's first assignment of error is sustained.

**{¶31}** We find appellant's second and third assignments of error to be moot.

**{¶32}** This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE,   J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS


SEAN C. GALLAGHER, J., DISSENTING:

**{¶33}** I respectfully dissent from the majority decision and would affirm the decision of the trial court.  I disagree with the majority's determination that the child advocate was acting as an agent of law enforcement and conducted a custodial interrogation.  I do not believe that appellant's Fifth or Sixth Amendment rights were violated.  I would overrule each of the assignments of error raised.

**{¶34}** Under his first assignment of error, appellant claims the trial court erred by allowing the child advocate from the Cuyahoga County Division of Children and Family Services ("CCDCFS") to testify about the statements she elicited from appellant. Appellant was questioned by the child advocate while he was in custody at the county jail after he had been arrested.  Although appellant had been given *Miranda* warnings when questioned at the jail by the detective, he was later independently interviewed by the child advocate without being given *Miranda* warnings.  Appellant claims his statements to the

child advocate were obtained during a custodial interrogation and without first advising appellant of his *Miranda* rights and obtaining a valid waiver.

{¶35} Pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." "Custodial interrogation" is considered "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

{¶36} *Miranda* warnings are required only when a suspect is subjected to custodial interrogation. *State v. Jones*, 8th Dist. Cuyahoga No. 83481, 2004-Ohio-5205, ¶ 39.[2] Further, the *Miranda* requirements do not apply when admissions are made to persons who are not law enforcement officers or their agents. *State v. Coonrod*, 12th Dist. Fayette No. CA2009-08-013, 2010-Ohio-1102, ¶ 8, citing *State v. Watson*, 28 Ohio St.2d 15, 26, 275 N.E.2d 153 (1971).

{¶37} The child advocate was not a "law enforcement officer" as the term is defined under R.C. 2901.01(A)(11)(b).[3] Furthermore, because social workers are private

---

[2] I do not agree with the state's reliance on the "freedom of movement standard." Also, I acknowledge that this is not a case of a prisoner who is already serving a term of imprisonment on unrelated charges. *See Howes v. Fields,* 565 U.S. 499, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012).

[3] A law enforcement officer is defined under R.C. 2901.01(A)(11)(b) as follows: "An officer, agent, or employee of the state or any of its agencies, instrumentalities, or political subdivisions, upon whom, by statute, a duty to conserve the peace or to enforce all or certain laws is imposed and the

individuals without the power to arrest, they generally have no duty to provide *Miranda* warnings. *Jones* at ¶ 40; *Coonrod* at ¶ 9. Nevertheless, they may be required to do so in specific instances, i.e., when acting as an agent of the police department. *Jones* at ¶ 40; *Coonrod* at ¶ 9. The record does not reflect that the child advocate acted as an agent of a law enforcement officer.

{¶38} The child advocate testified that the agency receives referrals for abuse and neglect and that she works "directly with * * * alleged perpetrators that are in the jail" and interviews the alleged perpetrators regarding the allegations. In regard to the sex-abuse referral CCDCFS received in this matter, the child advocate testified she interviewed appellant at the request of the ongoing social worker of record. The child advocate indicated that her protocol is to identify herself, inform the individual that the individual has been named as an alleged perpetrator, inform the individual of the allegations, and inform the individual that anything said can be subpoenaed by the courts and that it is up to the individual whether to continue with the interview. The record reflects that the child advocate was performing her customary duties as a child advocate, by interviewing an alleged perpetrator in jail.

{¶39} Appellant claims that there was testimony from the sex abuse intake social worker, who was assigned to the case, about how her department collaborates with the Cleveland Police Department in the investigation of sex crimes involving minors, and that such cooperation is required by Ohio law. However, her testimony was that she had

authority to arrest violators is conferred * * *."

contacted the police department in an effort to conduct a joint interview with the child, but she conducted her own interview because the police had already spoken to the child. She also contacted the hospital, spoke with the nurse, and viewed the hospital reports. She did not speak to the defendant, whose interview was conducted by the child advocate at the county jail.

{¶40} Pursuant to R.C. 2151.421(F), the children services agency's investigation of a report of child abuse or child neglect "shall be made in cooperation with the law enforcement agency" and the agency must "submit a report of its investigation, in writing, to the law enforcement agency." The duty to cooperate with and submit a report to law enforcement does not, in itself, demonstrate that the child advocate acted as an agent of law enforcement. *See State v. Phillips*, 4th Dist. Highland No. 11CA11, 2011-Ohio-6773, ¶ 14. *Phillips* was a similar case where the defendant was questioned by children services employees regarding allegations of sexual abuse of a child while he was incarcerated and after he had been questioned by a member of law enforcement and had invoked his Fifth Amendment rights. *Id*. at ¶ 17. The court recognized that children services has a statutory duty to investigate and that the investigation must be made in cooperation with law enforcement, but found this fell short of demonstrating that the children services investigators acted as agents of law enforcement. *Id*. at ¶ 13-14. The court determined that the children services investigators were simply executing their duty to investigate allegations of child abuse, and there was no evidence to suggest the

children services agency acted at the direction, behest, or control of law enforcement. *Id.* at ¶ 17.

{¶41} As the Ohio Supreme Court has recognized:

[T]he duty of giving "*Miranda* warnings" is limited to employees of governmental agencies whose function is to enforce law, or to those acting for such law enforcement agencies by direction of the agencies; that it does not include private citizens not directed or controlled by a law enforcement agency, even though their efforts might aid in law enforcement.

*State v. Bolan*, 27 Ohio St.2d 15, 18, 271 N.E.2d 839 (1971).

{¶42} Although the child advocate's report might have aided law enforcement, the record does not demonstrate that the child advocate was acting as an agent of law enforcement. Moreover, the child advocate is not deemed an agent of law enforcement by the mere fact that child advocates may cooperate and collaborate their investigations with the police. This also is not a case where a police officer was present during the interview conducted by the child advocate; rather, an independent interview was conducted.

{¶43} The record reflects that the child advocate was performing her customary duties as an investigator for CCDCFS, and there is nothing to show that she was acting at the direction, control, or behest of law enforcement. Thus, it cannot be said that the child advocate was acting as an agent of law enforcement or that appellant was subjected to a "custodial interrogation" as contemplated by *Miranda*. *See Phillips* at ¶ 17-18; *Coonrod*, 12th Dist. Fayette No. CA2009-08-013, 2010-Ohio-1102, at ¶ 13; *State v. Simpson*, 4th Dist. Ross No. 1706, 1992 Ohio App. LEXIS 818, 11 (Feb. 21, 1992). Because no

custodial interrogation occurred, appellant's Fifth and Sixth Amendment rights were not violated.   Therefore, I believe appellant's first assignment of error should be overruled.

{¶44} Under his second assignment of error, appellant claims that the trial court committed prejudicial error by admitting hearsay declarations made by the alleged victim to the police officer who interviewed her.   Specifically, he argues that the court erred by allowing the responding officer to testify that the alleged victim told him she had been raped.

{¶45} The record reflects that the responding officer was testifying to what the victim told him when he first arrived at the scene and began his investigation.   Although the trial court overruled an objection to this testimony, this was a bench trial and the trial court did not afford any deference to the statement.   The trial court stated, "I'm certainly not going to take it as evidence of the content."   Further, the improper admission of evidence is harmless beyond a reasonable doubt where the remaining evidence constitutes overwhelming proof of a defendant's guilt.   *State v. Murphy*, 91 Ohio St.3d 516, 555, 2001-Ohio-112, 747 N.E.2d 765, citing *State v. Williams*, 6 Ohio St.3d 281, 452 N.E.2d 1323 (1983), paragraph six of the syllabus.   In this matter, several other witnesses testified to the victim exclaiming she had been raped, and the remaining evidence in the record provided overwhelming evidence of appellant's guilt beyond a reasonable doubt. Thus, any error in the admission of the statement would have constituted harmless error. For these reasons, I would overrule appellant's second assignment of error.

**{¶46}** Under his third assignment of error, appellant claims his convictions were against the manifest weight of the evidence. When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id*.

**{¶47}** Appellant argues that the case came down to the victim's credibility and that doubt was cast on the state's case because it failed to present a crucial piece of evidence, i.e., the victim's underwear. The record reflects that the victim provided detailed testimony of the events that transpired, and other testimony and evidence introduced supported the victim's version of events. The witnesses were effectively cross-examined, and the court also heard testimony from appellant. The trial court was able to observe the witnesses and was in the best position to take into account any inconsistencies in their testimony in determining whether the proffered testimony was credible. The trial court thoroughly examined the testimony and the evidence presented and stated that it "didn't find anything about [appellant's] story to be credible[,]" that the victim's version of events "very credibly portrays a sexually assaulted 14-year-old[,]" and

that "it cannot be believed that the victim's actions here * * * was [*sic*] anything other than a recent victim of a brutal sexual assault."

{¶48} Upon review of the record, I do not believe this to be the exceptional case where the evidence weighs heavily against conviction. I would find appellant's convictions are not against the manifest weight of the evidence and overrule his third assignment of error.

{¶49} Accordingly, I dissent from the majority opinion and would affirm the judgment of the trial court.

**Key Words:**

Fifth Amendment, Sixth Amendment, Miranda Rights, Child Advocate, Agent of Law Enforcement, Custodial Interrogation, Interrogation of a Defendant Outside the Presence of Counsel.  The trial court erred in admitting the testimony of a child advocate who operated as an agent of law enforcement and conducted a custodial interrogation of appellant in jail without providing Miranda warnings or obtaining a waiver of appellant's sixth amendment rights after he was assigned counsel at his arraignment.