[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jackson,* Slip Opinion No. 2018-Ohio-2169.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2169

THE STATE OF OHIO, APPELLANT, *v.* JACKSON, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jackson,* Slip Opinion No. 2018-Ohio-2169.]

*Criminal law—Fifth and Sixth Amendments—A social worker's statutory duty to cooperate and share information with law enforcement with respect to child-abuse investigations does not render social worker an agent of law enforcement for purposes of Fifth and Sixth Amendments to United States Constitution when social worker interviews an alleged perpetrator unless other evidence demonstrates that social worker acted at direction or under control of law enforcement—Record does not support court of appeals' conclusion that social worker was acting as law-enforcement agent when she interviewed child-abuse suspect—Court of appeals' judgment reversing suspect's convictions reversed and cause remanded.*

(No. 2017-0145—Submitted February 13, 2018—Decided June 7, 2018.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 103957, 2016-Ohio-8144.

_____

**SYLLABUS OF THE COURT**

A social worker's statutory duty to cooperate and share information with law enforcement with respect to a child abuse investigation does not render the social worker an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution when the social worker interviews an alleged perpetrator unless other evidence demonstrates that the social worker acted at the direction or under the control of law enforcement.

_____

**O'DONNELL, J.**

{¶ 1} The state of Ohio appeals from a judgment of the Eighth District Court of Appeals reversing the convictions of Demetrius Jackson for kidnapping, gross sexual imposition, and two counts of rape. The issue presented on this appeal is whether a social worker's statutory duty to cooperate and share information with law enforcement regarding a child abuse investigation renders the social worker an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution if the social worker interviews an alleged perpetrator.

**Facts and Procedural History**

{¶ 2} On August 5, 2015, C.H., who at the time was 14 years of age, went to the home of N.J. and joined her sister, S.H., and her sister's friend, Demetrius Jackson, who also were there. C.H. went to sleep in an upstairs bedroom, and when Jackson woke her up and tried to lay down with her, she pushed him out of the bed and he left the room. However, he later returned and offered C.H. $200 a week if she would allow him to perform oral sex on her and would keep it secret. She refused, and Jackson then ripped her underwear off, performed oral sex on her, and choked her when she resisted. He also digitally penetrated her and had vaginal sex with her. She escaped and ran to a family member's nearby home. The police were

called, and she was taken to a hospital where she was examined and treated. Police arrested Jackson and attempted to interrogate him but he refused to speak after being advised of his *Miranda* rights.

{¶ 3} The incident was reported to the Cuyahoga County Division of Children and Family Services via a hotline phone call on the day of the incident, and the case was assigned to Tina Funfgeld, a sex abuse intake social worker assigned to the agency's sex abuse unit. Funfgeld contacted the police to conduct a joint interview with C.H., but police had already interviewed her, so Funfgeld conducted a separate interview. Separately, CCDCFS social worker and child advocate Holly Mack, who was "assigned to the county jail," interviewed Jackson on August 11, 2015, at the request of Funfgeld. Mack works "directly with incarcerated parents as well as alleged perpetrators that are in the jail," and one of her "primary job duties" is to interview alleged perpetrators when the agency receives referrals for abuse and neglect. Mack stated that when she meets with suspects, she identifies herself and advises them of the allegations, that anything they say "can be subpoenaed by the [c]ourts," and that it is up to them whether to continue the interview. During his interview, Jackson told Mack that he had consensual oral sex with C.H., whom he believed was at least 21 years of age, and that afterwards she requested money, which he refused to give her. He denied having vaginal sex with her.

{¶ 4} A grand jury indicted him on three counts of rape and additional counts of gross sexual imposition, importuning, felonious assault, and kidnapping with a sexual motivation specification. Jackson waived the right to a jury trial, and at a bench trial, his counsel objected to Mack's testimony about the statements Jackson had made to her because she questioned him "as an agent of the State and law enforcement" and failed to notify him of his *Miranda* rights. The court overruled the objection and allowed Mack to testify. As a result of that ruling,

Jackson testified on his own behalf and claimed he only had consensual oral sex with C.H.

{¶ 5} The court dismissed the importuning and felonious assault charges, found Jackson not guilty of one of the counts of rape, but found him guilty of the remaining two counts of rape, the gross sexual imposition charge, and the kidnapping charge with a sexual motivation specification. For purposes of sentencing, the court merged the gross sexual imposition offense with the kidnapping offense and therefore sentenced Jackson on two counts of rape and one count of kidnapping with the specification. The court imposed an aggregate 11 year prison term.

{¶ 6} Jackson appealed, claiming that the trial court violated his constitutional rights by allowing Mack to testify about his statements to her, that the court violated his Sixth Amendment rights by admitting hearsay statements made by C.H. to a police officer, and that his convictions were against the manifest weight of the evidence. In a split decision authored by Judge Eileen A. Gallagher, the appellate court reversed his convictions. The majority explained that pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694 (1966), "statements stemming from custodial interrogation of the defendant must be suppressed unless the defendant has been informed of his Fifth and Sixth Amendment rights before being questioned." 2016-Ohio-8144, 75 N.E.3d 922, ¶ 15. The majority further explained that *Miranda* only applies to admissions made to officers of the law or their agents, that a person must act "under the direction or control of a law enforcement agency" to qualify as an agent of law enforcement, and that based on the facts before it, Mack acted as an agent of law enforcement when she interrogated Jackson. *Id.* at ¶ 17-18. The majority concluded the direction or control element was

satisfied in this instance due to the formal procedure established by CCDCFS and local law enforcement for routinely conducting interrogations of defendants without providing Miranda warnings. These interrogations are proceeding under the direction, and for the benefit, of law enforcement pursuant to a "memorandum of understanding" required by Ohio law.

*Id.* at ¶ 18, citing former R.C. 2151.421(F) and (J) (now R.C. 2151.421(G) and (K)). The majority further explained that former R.C. 2151.421(F) required a child advocate "not only to conduct an investigation in cooperation with law enforcement but also to submit a report of the advocate's investigation, in writing, to law enforcement." *Id.* at ¶ 20.

{¶ 7} The majority also noted that Mack was assigned to the jail and that one of her primary duties was to interview alleged perpetrators in abuse cases. *Id.* at ¶ 19. It could find "no legitimate purpose" for Mack's interview "other than to directly assist the investigation of law enforcement pursuant to [former] R.C. 2151.421(F)." *Id.* at ¶ 21. The majority acknowledged Mack "may have been performing her customary duties as an investigator for CCDCFS" but stated that it was "problematic" that her "customary duties are designed to routinely violate the constitutional rights of defendants." *Id.* at ¶ 22.

{¶ 8} The majority held Mack violated Jackson's Fifth Amendment rights by subjecting him to custodial interrogation without *Miranda* warnings and violated his Sixth Amendment right to counsel by conducting the interrogation outside the presence of his attorney. *Id.* at ¶ 28-29.

{¶ 9} Judge Sean C. Gallagher dissented. He opined that Mack was not an agent of law enforcement because the record did not demonstrate she acted at the direction, control, or behest of law enforcement and that the statutory duty "to cooperate with and submit a report to law enforcement does not, in itself,

demonstrate that the child advocate acted as an agent of law enforcement." *Id.*, 2016-Ohio-8144, 75 N.E.3d 922, at ¶ 40, 43 (Gallagher, J., dissenting).

{¶ 10} The state appealed and presented one proposition of law:

A social worker's duty to cooperate and share information with law enforcement does not render the social worker an agent of law enforcement, under the Fifth and Sixth Amendments of the U.S. Constitution, where the social worker does not act at the direction, control, or behest of law enforcement.

**Positions of the Parties**

{¶ 11} The state contends that *Miranda* applies only to law enforcement officers or their agents, that it is undisputed that a social worker is not a law enforcement officer, and that a social worker's statutory duty to cooperate and share information with law enforcement with respect to a child abuse investigation does not transform the social worker into an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution. It argues that interviews of alleged perpetrators by social workers are "inherently less coercive than those addressed by *Miranda*" and "serve important interests related to the health and safety of children." It asserts that the proper inquiry for determining whether a social worker is an agent of law enforcement is whether the totality of the facts demonstrate the social worker acted at the direction, control, or behest of law enforcement, and here, there is no evidence that Mack acted in such a manner when she interviewed Jackson.

{¶ 12} Jackson maintains that the state's "entire argument rests on the faulty premise" that the requirements of *Miranda* apply only to law enforcement officers or their agents, and he relies on *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.E.2d 359 (1981), and *State v. Roberts*, 32 Ohio St.3d 225, 513 N.E.2d 720 (1987),

for the proposition that *Miranda* applies when a state actor subjects a defendant to custodial interrogation and "the totality of the circumstances warran[t] use of the procedural safeguards required by *Miranda*." Jackson points out that courts in several jurisdictions have held *Miranda* applies to social workers employed by children services agencies, and he argues that social workers should be treated no differently from Internal Revenue Service agents, who must comply with *Miranda* pursuant to *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.E.2d 381 (1968). He claims it is "important to recognize" that Mack was a "member of a special unit" at CCDCFS that "collaborated with law enforcement," that she was "assigned to the county jail," and that her "only job-related duty was to interview 'alleged perpetrators' in the county jail," and that it is reasonable to assume that she possesses interrogation skills comparable to or exceeding those of most law enforcement officers. He also maintains that "there was both a formal and informal relationship between the agency and law enforcement which involved a significant level of coordination, cooperation, and sharing of information," and "the agency and law enforcement very much worked as a *team* in the investigation and prosecution of crimes against children." (Emphasis sic.)

## Issue

{¶ 13} The issue presented on this appeal is whether Mack's statutory duty to cooperate and share information with law enforcement resulting from her interview with Jackson rendered her an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution.

## Law and Analysis

{¶ 14} "The Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, states that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." (Ellipsis sic and citation omitted.) *State v. Graham*, 136 Ohio St.3d 125, 2013-Ohio-2114, 991 N.E.2d 1116, ¶ 19. Pursuant to *Miranda*, "the prosecution may not

use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444, 86 S.Ct. 1602, 16 L.E.2d 694.

{¶ 15} In *State v. Watson*, 28 Ohio St.2d 15, 275 N.E.2d 153 (1971), this court stated, "Inasmuch as custodial interrogation, as defined in *Miranda* * * * means 'questioning initiated by law enforcement officers after a person has been taken into custody,' the *Miranda* requirements do not apply to admissions made to persons who are not officers of the law or their agents * * *." *Id.* at paragraph five of the syllabus, quoting *Miranda* at 444; *see also State v. Bernard*, 31 So.3d 1025, 1029 (La.2010) (*Miranda* applies only if "the interrogation is conducted by a 'law enforcement officer' or someone acting as their agent"). And we have observed that other courts have recognized

> that the duty of giving "*Miranda* warnings" is limited to *employees of governmental agencies whose function is to enforce law*, *or to those acting for such law enforcement agencies by direction of the agencies*; * * * it does not include private citizens *not directed or controlled by a law enforcement agency*, *even though their efforts might aid in law enforcement*.

(Emphasis added.) *State v. Bolan*, 27 Ohio St.2d 15, 18, 271 N.E.2d 839 (1971).

{¶ 16} "The Sixth Amendment, applied to the States through the Fourteenth Amendment, guarantees that '[i]n all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence.' " (Ellipsis sic.) *Kansas v. Ventris*, 556 U.S. 586, 590, 129 S.Ct. 1841, 173 L.Ed.2d 801 (2009). In *Ventris*, the United States Supreme Court explained:

The core of this right has historically been, and remains today, "the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial." *Michigan v. Harvey*, 494 U.S. 344, 348, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990). We have held, however, that the right extends to having counsel present at various pretrial "critical" interactions between the defendant and the State, * * * including the deliberate elicitation *by law enforcement officers (and their agents)* of statements pertaining to the charge.

(Emphasis added.) *Id.*

{¶ 17} "[W]hether someone is acting as an agent of law enforcement is dependent upon the unique circumstances of each case." *Bernard* at 1033.

### *Child Services Agency*

{¶ 18} R.C. 2151.421(G)(1)—formerly R.C. 2151.421(F)(1)—provides that generally, a public children services agency

shall investigate, within twenty-four hours, each report of child abuse or child neglect that is known or reasonably suspected or believed to have occurred * * * that is referred to it under this section to determine the circumstances surrounding the injuries, abuse, or neglect * * *, the cause of the injuries, abuse, neglect, or threat, and the person or persons responsible. The investigation shall be made in cooperation with the law enforcement agency and in accordance with the memorandum of understanding prepared under division (K) of this section. A representative of the public children services agency shall, at the time of initial contact with the person subject to

the investigation, inform the person of the specific complaints or allegations made against the person. * * *

* * * The public children services agency shall submit a report of its investigation, in writing, to the law enforcement agency.

{¶ 19} R.C. 2151.421(K)—formerly R.C. 2151.421(J)—addresses memoranda of understanding. R.C. 2151.421(K)(1) directs that a public children services agency "shall prepare a memorandum of understanding that is signed by" certain officials and organizations, such as the county juvenile court judge, law enforcement officers handling child abuse and neglect cases in the county, the county prosecutor, and the county humane society. The memorandum

shall set forth the normal operating procedure to be employed by all concerned officials in the execution of their respective responsibilities under this section * * * and shall have as two of its primary goals the elimination of all unnecessary interviews of children who are the subject of reports made pursuant to division (A) or (B) of this section and, when feasible, providing for only one interview of a child who is the subject of any report.

R.C. 2151.421(K)(2).

{¶ 20} In addition, the memorandum "shall include all of the following":

(a) The roles and responsibilities for handling emergency and nonemergency cases of abuse and neglect;

(b) Standards and procedures to be used in handling and coordinating investigations of reported cases of child abuse and reported cases of child neglect, methods to be used in interviewing

the child who is the subject of the report and who allegedly was abused or neglected, and standards and procedures addressing the categories of persons who may interview the child who is the subject of the report and who allegedly was abused or neglected.

R.C. 2151.421(K)(3).

{¶ 21} Although CCDCFS's memorandum of understanding is not part of the record in this case, nothing in R.C. 2151.421 or the record supports the conclusion that pursuant to it, Mack acted as an agent of law enforcement when she interviewed Jackson. Although R.C. 2151.421(G)(1) imposes a duty on a children services agency to cooperate with and provide information to law enforcement regarding child abuse investigations, it does not mandate that agency employees interview alleged perpetrators of child abuse at the direction or under the control of law enforcement. *See also Ohio v. Clark*, ___ U.S. ___, 135 S.Ct. 2173, 2183, 192 L.E.2d 306 (2015) (mandatory child abuse reporting statutes "alone cannot convert a conversation between a concerned teacher and her student into a law enforcement mission aimed primarily at gathering evidence for a prosecution" for purposes of the Confrontation Clause).

{¶ 22} Thus, a social worker's statutory duty to cooperate and share information with law enforcement with respect to a child abuse investigation does not render the social worker an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution when the social worker interviews an alleged perpetrator unless other evidence demonstrates that the social worker acted at the direction or under the control of law enforcement.

{¶ 23} And here, the record contains no evidence that Mack acted as an agent of law enforcement when she interviewed Jackson. The only evidence of contact between CCDCFS and law enforcement about the investigation in this matter before Mack interviewed Jackson is Funfgeld's testimony that she contacted

law enforcement to coordinate a joint interview of C.H., which is consistent with the statutory goal of a memorandum of understanding of eliminating unnecessary interviews of child victims. *See* R.C. 2151.421(K)(2). There is no evidence that law enforcement asked Mack to interview Jackson before or after the detective's failed attempt to interview him or that law enforcement influenced Mack's interview of Jackson in any way.

**{¶ 24}** Accordingly, the appellate court erred when it concluded that Mack acted as an agent of law enforcement in conducting an interview of Jackson.

*Inapposite Authority*

**{¶ 25}** Jackson's reliance on *Mathis*, *Estelle*, and *Roberts* is misplaced. In *Mathis*, the United States Supreme Court considered whether an IRS agent who questioned an individual in connection with a tax investigation while he was serving a state prison sentence had to give the individual *Miranda* warnings. 391 U.S. at 3-4, 88 S.Ct. 1503, 20 L.E.2d 381, fn. 2. *Mathis* rejected the government's attempt "to escape application of" *Miranda* on the grounds that the interview occurred "as part of a routine tax investigation where no criminal proceedings might even be brought" and that the defendant was not "put in jail by the officers questioning him, but was there for an entirely separate offense." *Mathis* at 4. As the Supreme Court of Louisiana has noted, in *Mathis*, the court "was *not* called upon to decide whether the IRS employee was a 'law enforcement agent,' as the government apparently ceded that point." (Emphasis sic.) *Bernard*, 31 So.3d at 1030.

**{¶ 26}** In *Estelle*, the United States Supreme Court held that a state court violated the Fifth and Sixth Amendment rights of a defendant in a capital case when it ordered a psychiatric examination to determine his competency to stand trial, the psychiatrist interviewed the defendant in jail without advising him of his *Miranda* rights, and during sentencing, the court allowed the state to question the psychiatrist about statements the defendant made during the interview in order to establish his

future dangerousness even though defense counsel was not notified in advance that the psychiatric examination would encompass that issue. 451 U.S. at 456-458, 461, 467-468, 470-471, 101 S.Ct. 1866, 68 L.E.2d 359. The Supreme Court concluded the fact that the defendant "was questioned by a psychiatrist designated by the trial court to conduct a neutral competency examination, rather than by a police officer, government informant, or prosecuting attorney, is immaterial" because when the psychiatrist testified at sentencing, "his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting." *Id.* at 467. This case is distinguishable because it does not involve a court ordered examination, and the Supreme Court has observed that the "opinion in *Estelle* suggested that [its] holding was limited to the 'distinct circumstances' presented there," *Penry v. Johnson*, 532 U.S. 782, 795, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001), quoting *Estelle* at 466.

{¶ 27} In *Roberts*, this court considered whether statements a probationer made to his probation officer while in custody without prior *Miranda* warnings were admissible in a subsequent criminal trial. 32 Ohio St.3d at 227, 513 N.E.2d 720. Although we observed that decisions in other jurisdictions were in conflict on the issue, noted that "[m]ost of these cases turn on whether a probation officer is a 'law enforcement officer' under *Miranda*," *id.*, and concluded that the "better rule is followed in those jurisdictions which require a probation officer to give *Miranda* warnings prior to questioning" a probationer who is in custody, *Roberts* at 231, we did not specifically determine whether a probation officer is a law enforcement officer or agent. However, we noted that R.C. 2901.01(A)(11)—formerly R.C. 2901.01(K)—defines "law enforcement officer" to include an officer of the state with a statutory duty to enforce laws and authority to arrest violators and that R.C. 2951.08 gives probation officers the authority to arrest a defendant during a period of probation, *id.* at 228, fn. 7, and we emphasized that a probationer has an obligation "to ' "report to" ' and ' "answer questions posed by a probation officer" '

' " and is under " 'heav[y] psychological pressure to answer questions put by his probation officer, a figure of both authority and trust,' " *id.* at 230, quoting *Marrs v. State*, 53 Md.App. 230, 233, 452 A.2d 992 (1982), quoting *United States v. Rea*, 678 F.2d 382, 390 (2d Cir.1982). Here, there is no assertion that Mack possessed authority to make arrests, and the record does not demonstrate that Jackson and Mack had a relationship comparable to that of a probationer and probation officer.

**{¶ 28}** Accordingly, none of those cases support the position that Mack had an obligation to provide Jackson with *Miranda* warnings even though she was not an agent of law enforcement.

**{¶ 29}** And because Mack is not an agent of law enforcement, the appellate court also erred when it concluded the trial court violated the Fifth and Sixth Amendments, as applied to the states through the Fourteenth Amendment, in admitting her testimony.

### Conclusion

**{¶ 30}** A social worker's statutory duty to cooperate and share information with law enforcement with respect to a child abuse investigation does not render the social worker an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution when the social worker interviews an alleged perpetrator unless other evidence demonstrates that the social worker acted at the direction or under the control of law enforcement. In this case, no evidence indicates that Mack acted at the direction or under the control of law enforcement when she interviewed Jackson.

**{¶ 31}** Accordingly, we reverse the judgment of the appellate court, and we remand this case to that court to consider the assignments of error it did not address.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and FRENCH, FISCHER, and DEWINE, JJ., concur.

KENNEDY, J., concurs in judgment only.

14

DeGenaro, J., dissents, with an opinion.

_____

**DeGenaro, J., dissenting.**

{¶ 32} I agree with the majority that a state-employed social worker's statutory duty to share with law enforcement information concerning a child-abuse investigation does not render the social worker an agent of law enforcement in all cases—I would stop short of creating a bright-line rule. Although the statutory scheme and the way it operates clearly establish a cooperative relationship between children's services agencies and law enforcement, whether a social worker acted as an agent of law enforcement when interviewing an alleged perpetrator must ultimately be determined on a case-by-case basis. The proper analysis requires determining which of two distinct statutory duties the social worker was performing during the interview: the reporting duty under R.C. 2151.421(A)(1)(a) or the investigative duty under R.C. 2151.421(G)(1).

{¶ 33} Here, the effect of R.C. 2151.421, coupled with the evidence—that one of the primary job duties of Cuyahoga County Division of Children and Family Services ("CCDCFS") social worker and child advocate Holly Mack was to interview alleged perpetrators in jail—never child victims; her 17 years of experience; that she interrogated appellee, Demetrius Jackson, in jail after he had been arraigned on the charges she was investigating and after he had already invoked his *Miranda* rights when questioned by police—leads to the conclusion that when she interviewed Jackson, Mack was functioning as an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution. Accordingly, I dissent from the court's judgment and would affirm the judgment of the court of appeals.

{¶ 34} Mack's interview of Jackson was undertaken pursuant to a statutory scheme that directs children's services agencies, law enforcement, and prosecutors to work collaboratively to investigate and prosecute crimes against children. R.C.

15

2151.421(G)(1) mandates that social workers employed by public children's services agencies *do more than merely report* instances of child abuse or neglect to law enforcement as required by R.C. 2151.421(A). Rather, they must "*investigate* * * * to determine the circumstances surrounding the injuries, abuse or neglect, * * * the cause of the injuries, abuse, neglect, or threat, *and the person or persons responsible*." (Emphasis added.) R.C. 2151.421(G)(1). That "investigation shall be made *in cooperation with* the law enforcement agency." (Emphasis added.) *Id*.

**{¶ 35}** In furtherance of this duty, a children's services agency is also required to "submit a report of its investigation, in writing, to the law enforcement agency" and to "make any recommendations to the county prosecuting attorney or city director of law that it considers necessary to protect any children that are brought to its attention." R.C. 2151.421(G)(1) and (2). As a corollary, R.C. 5101.13 provides for the establishment of a uniform statewide automated child-welfare information system ("SACWIS"), which, among other things, "shall contain records regarding * * * [i]nvestigations of children and families * * * in accordance with [R.C.] 2151.421." R.C. 5101.13(A)(1). Mack testified that she uploaded the results of her interview with Jackson into this database.

**{¶ 36}** Information contained in SACWIS may be accessed by, among others, a prosecuting attorney when the "access * * * is directly connected with assessment, investigation, or services regarding a child or family." R.C. 5101.132(A)(1)(a); *see also* Ohio Adm.Code 5101:2-33-21(F)(2) and (3) (providing that public children's service agencies "shall release" child-welfare information in SACWIS to "[l]aw enforcement officials who are investigating a report of child abuse or neglect" and the "county prosecutor who is investigating a report of child abuse or neglect").

**{¶ 37}** The statutory scheme formalizes cooperative investigations among children's services agencies, law enforcement, and prosecutors. Therefore, I agree, to a point, with Jackson's argument that it would be disingenuous for us to require

that police specifically request that a social worker question an alleged perpetrator before the social worker may be considered an agent of law enforcement for purposes of the Fifth Amendment—indeed, the institutional arrangement provided by law obviates the need for such a request, in many cases. That said, the facts of each case must be examined to determine whether the social worker was acting as an agent of the police.

{¶ 38} I question the majority's reliance on *Ohio v. Clark*, ___ U.S. ___, 135 S.Ct. 2173, 2183, 192 L.Ed.2d 306 (2015), as support for its conclusion that Mack was not acting as an agent of law enforcement when she interviewed Jackson. *Ohio v. Clark* involved a preschool teacher's statutory *duty to report* suspected abuse to law enforcement. At issue here is a state-employed social worker's statutory *duty to cooperatively investigate* suspected abuse with law enforcement. *Compare* R.C. 2151.421(A)(1)(a) and (b) *with* R.C. 2151.421(G)(1). *See Ohio v. Clark* at 2182-2183.

{¶ 39} As Chief Justice O'Connor explained in her dissent in *State v. Clark*, 137 Ohio St.3d 346, 2013-Ohio-4731, 999 N.E.2d 592, *rev'd and remanded*, __ U.S. __, 135 S.Ct. 2173, 192 L.Ed.2d 306:

> What the [reporting] statute requires is actually quite minimal: when teachers, or others who are required to report, encounter suspected abuse or neglect in their official capacity, they must report it. In turn, *the children's services agency or the police—not the mandatory reporters—are responsible for investigating* the injury or condition "to determine the circumstances surrounding the injuries, abuse, or neglect or the threat of injury, abuse, or neglect, the cause of the injuries, abuse, neglect, or threat, and the person or persons responsible."

(Emphasis added.) *Id.* at ¶ 85 (O'Connor, C.J, dissenting), quoting former R.C. 2151.421(F)(1) (now R.C. 2151.421(G)(1)). *Ohio v. Clark* is therefore factually distinguishable from this case.

{¶ 40} Moreover, *Ohio v. Clark* involved a distinct constitutional issue: whether statements made by a minor victim of abuse to his teacher were testimonial and therefore barred under the Sixth Amendment's Confrontation Clause from admission at trial. For these reasons, *Ohio v. Clark* does not control the outcome of this case.

{¶ 41} That said, I agree with the majority that R.C. 2151.421(G) and related statutory provisions do not *categorically* transform a children's services investigator into a law-enforcement agent. However, the specific facts here lead to the conclusion that Mack was acting as the functional equivalent of law enforcement when she had Jackson removed from his housing unit in the jail so she could question him.

{¶ 42} The lead CCDCFS sex-abuse intake social worker Tina Funfgeld explained in her testimony that Mack was "assigned to the county jail," and indeed, Mack testified that one of her primary job duties was to interview alleged perpetrators in jail and that she interviewed no one else. Mack had 17 years of experience with CCDCFS. Jackson, on the other hand, though he had a prior criminal record, did not display a high level of insight regarding the criminal investigative process. For example, according to his testimony, after the rape allegations were levied against him, he waited for the police to arrive, believing that a rape kit would be performed on site and would immediately exonerate him.

{¶ 43} Moreover, Jackson's statement to Mack occurred after he had declined to speak to police. He did not talk to any of the officers at the hospital where he was taken upon his arrest. And when a Cleveland Police detective visited him at the jail and advised him of his *Miranda* rights, Jackson refused to speak, explaining at trial that he "just wasn't saying nothing after that."

18

**{¶ 44}** Thereafter, Mack came to the county jail to question Jackson. Importantly, for purposes of this appeal, the only issue is whether Mack acted as an agent of law enforcement. The state concedes that Jackson was in custody during Mack's interview and that Mack did not *Mirandize* Jackson; further, the state does not dispute that Mack's interview constitutes an interrogation.

**{¶ 45}** Mack testified to her protocol when interviewing an alleged perpetrator: "I identify myself, I let them know that they have been named as the alleged perpetrator, I let them know what the allegations are against them, and then I also let them know that anything they tell me can be subpoenaed by the Courts. It is then up to them whether or not they want to continue with the interview or not." Mack further testified that when informed of the allegations against him, Jackson proceeded to tell her "his side of the story."

**{¶ 46}** The manner in which Mack conducted her interview resulted in one of the primary concerns of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694 (1966): the use of deceptive tactics to obtain incriminating statements. *See State v. Roberts*, 32 Ohio St.3d 225, 230-231, 513 N.E.2d 720 (1987). She never testified whether—or if so—how she followed her protocol with Jackson or whether she explained the ramifications *for him*. Specifically, there is no indication that Jackson understood that his statements to Mack could be used against him at trial or—what ultimately happened here—that the admission of her testimony would put him in the position of taking the stand at trial when he otherwise would not have. Based on these facts, it is highly questionable whether Jackson would have spoken to Mack had she first advised him of his *Miranda* rights.

**{¶ 47}** Contrary to the majority's conclusion, *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), and *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), are instructive. *Mathis* involved an Internal Revenue Service ("IRS") agent who questioned an inmate in prison where the inmate was serving a state sentence. The inmate was ultimately charged with and

convicted of violations of the federal false-claims statute.  On appeal, the Supreme Court concluded that statements and information gathered by the agent should not have been admitted at the defendant's trial because the agent had failed to provide him *Miranda* warnings.  Implicit in the court's decision was a determination that the IRS agent was the functional equivalent of law enforcement.

{¶ 48} *Estelle* is even more on point.  In that case, the Supreme Court held that *Miranda* applied to a psychiatric examination conducted by a court-appointed psychiatrist, concluding that the fact that the defendant "was questioned by a psychiatrist designated by the trial court to conduct a neutral competency examination, rather than by a police officer, government informant, or prosecuting attorney, is immaterial." *Id.* at 467.  The Supreme Court observed that under these circumstances, the psychiatrist "went beyond simply reporting to the court on the issue of competence and testified for the prosecution." *Id.*  At that point, "his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting." *Id.*

{¶ 49} Similarly, Mack's interrogation of Jackson exceeded the customary function of a child advocate: to protect the safety and welfare of children.  Rather, she was acting as an extension of law enforcement.  Mack went beyond investigating and reporting—whether, for example, the victim was at risk of exposure to a sexually transmitted disease.  Instead, she elicited and ultimately recounted Jackson's "side of the story," which put Jackson in the position of taking the stand in order to counter Mack's testimony.

{¶ 50} Further, the decision of the United States Court of Appeals for the Second Circuit in *Jackson v. Conway*—affirming the grant of federal habeas corpus relief in a case with facts strikingly similar to those here—is persuasive.  763 F.3d 115 (2d Cir.2014).  In that case, the defendant was arrested before dawn after he was accused of committing multiple rapes during the night.  Later in the morning, after police had read him his *Miranda* rights, he invoked his right to remain silent

20

and refused to speak to them. He remained in a holding cell until the afternoon. At some point during the day, after interviewing the victims, a child-protective-services ("CPS") caseworker from the county department of social services interviewed the defendant in the hallway outside of his holding cell after the defendant was escorted there by an officer. The caseworker "introduced herself as a CPS caseworker, explained her role, and asked [the defendant] if she could speak with him about the victims' allegations. She did not, however, inform him of his right to an attorney or give him any other warnings." *Id*. at 122. The defendant agreed to speak with her and, in essence, told her his side of the story. At trial, the caseworker testified about what the defendant had related to her. Applying *Mathis*, the Second Circuit held that the admission of the caseworker's testimony about the interview violated the defendant's Fifth Amendment right against compelled self-incrimination. *Jackson v. Conway* at 135-140.

{¶ 51} As the majority opinion in the court of appeals here emphasized: it "is absolutely undisputed" that if law-enforcement officers conducted interviews in the manner in which Mack did, the practice would violate the Fifth Amendment. 2016-Ohio-8144, 75 N.E.3d 922, ¶ 20. Given the facts of this case, Mack was the functional equivalent of a law-enforcement agent and absent *Miranda* warnings, her interrogation of Jackson violated his right against self-incrimination. "Any other conclusion would allow the State to ignore a defendant's constitutional rights merely by having the interrogation conducted by someone who lacks the title 'law enforcement officer' but who is otherwise performing the interrogation of such an officer." *State v. Deases*, 518 N.W.2d 784, 790 (Iowa 1994) (concluding that "when a state official conducts a custodial interrogation that would require a *Miranda* warning if undertaken by a police officer, then the official is similarly required to give a *Miranda* warning").

**{¶ 52}** Based on all of the above, the admission of Mack's testimony violated Jackson's Fifth Amendment right to be free from compelled self-incrimination.

**{¶ 53}** I would also affirm the court of appeals' conclusion that the admission of Mack's testimony violated Jackson's Sixth Amendment right to counsel. "The Sixth Amendment protects the right of the accused not to be confronted by an *agent of the State* regarding matters as to which the right to counsel has attached without counsel being present." (Emphasis added.) *Maine v. Moulton*, 474 U.S. 159, 177, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), fn. 14. "[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings. Interrogation by the State is such a stage." (Citations omitted.) *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009).

**{¶ 54}** The state does not dispute that Jackson was subjected to a custodial interrogation. Mack's interview with Jackson took place after he had been arraigned and after he had invoked his *Miranda* rights when a detective attempted to interrogate him at the jail. Significantly (in light of Jackson's prior invocation of *Miranda*), the record fails to demonstrate that Mack *Mirandized* him or asked him whether he wanted an attorney present. Based on all of the above, the admission of Mack's testimony violated Jackson's Sixth Amendment right to counsel.

**{¶ 55}** In sum, based on the totality of the circumstances in this case, I would conclude that Mack was functioning as an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution when she questioned Jackson. Therefore, I would affirm the judgment of the court of appeals.

**{¶ 56}** Respectfully, I dissent.

————————————

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, for appellant.

Jonathan N. Garver, for appellee.

_____