The State of Ohio, Appellant, *v.* Bolan, Appellee.

(No. 70-147—Decided June 30, 1971.)

*Mr. John T. Corrigan*, prosecuting attorney, and *Mr. Harvey R. Monck*, for appellant.

*Mr. Bernard Berkman, Mr. Q. Albert Corsi* and *Mrs. Nancy C. Schuster*, for appellee.

LEACH, J.  Basically, this case presents three issues: (1) Whether the trial court had the duty "to require" the actual production of the gloves at trial; (2) whether the failure of the security officer to give all of the warnings set out in *Miranda* v. *Arizona* (1966), 384 U. S. 436, renders his testimony as to any admissions or confessions made by defendant, while detained pursuant to R. C. 2935.041, inadmissible in evidence; and (3) whether, in any event, the admission in evidence of statments made by the defendant to the security officer was "harmless error" within the scope of *Chapman* v. *California*, 386 U. S. 18, and *Harrington* v. *California*, 395 U. S. 250.

Defendant does not assert that conviction of larceny (or determination of delinquency based on an act which would be larceny if committed by an adult) can never be had except upon physical presentation of the stolen merchandise at trial.  Since the gist of such an offense is the unlawful taking, other evidence, including of course eyewitness testimony as to the taking itself, can supply proof beyond a reasonable doubt.

Instead, counsel for defendant seek to equate the failure of the trial judge to *sua sponte* order the production of the gloves in court as amounting to a "suppression of evidence" in violation of due process of law. Here, counsel for defendant merely asked the security officer "Do you have the gloves here?" When counsel received a negative response she made no demand, by subpoena or otherwise, or even any request that the gloves be produced at trial.[1] Under this state of the record, we conclude, and so hold, that the trial court had no duty to *sua sponte* order the production of the gloves at trial, and thus that its failure "to require" their production was not error.

We turn now to the real "public or great general interest" issue of this case. Do the requirements of *Miranda, supra,* extend to any questioning or interrogation by a private citizen? Here, the record is clear that although some of the *"Miranda* warnings" were given by the security officer, others were not. It is not clear from the record as to whether defendant's admission was in response to questions or was merely a spontaneous or volunteered statement. See *State* v. *Hymore* (1967), 9 Ohio St. 2d 122. However, for the purposes of this opinion, we will assume that the statement of defendant was in response to interrogation by the security officer.

In this case, there is no evidence to indicate that the "security officer" of the May Company was anything other than an employee of the May Company, or that he had any power of detention of a suspect other than that granted store employees by R. C. 2935.041.[2]

---

[1] The record would indicate that the gloves were not retained by the security officer but were not turned over to the police when they arrived and took defendant into custody. One policeman testified at trial but no questions were asked him as to the availability of the gloves.

[2] R. C. 2935.041, as in force on December 7, 1968, read:

"A merchant, or a merchant's employee who has probable cause for believing that items offered for sale by a mercantile establishment have been unlawfully taken by a person, may, in order to recover

From a careful examination of the language of the opinion of Chief Justice Warren in *Miranda v. Arizona, supra* (384 U. S. 436, 444), we think it clear that the term, "custodial interrogation," was limited to "questioning initiated by law enforcement officers." The opinion expressly states that, "by custodial interrogation, we mean questioning initiated by law enforcement officers * * *." *Miranda* involved four separate cases, in each of which the interrogating officers were policemen. *Miranda* speaks of "law enforcement agencies" (*ibid.*, 442); "law enforcement officers" (*ibid.*, 444); "police interrogation procedures" (*ibid.*, 457); "police" (*ibid.*, 465); and "authorities" (*ibid.*, 472).

In our opinion, the limited right of temporary detention extended to a merchant's employee by R. C. 2935.041 does not place him in the category of a "law enforcement officer" within the purview of *Miranda*.

Essentially this same conclusion has been reached almost uniformly by courts of other jurisdictions. The rationale of these cases is that the duty of giving "*Miranda* warnings" is limited to employees of governmental agencies whose function is to enforce law, or to those acting for such law enforcement agencies by direction of the agencies; that it does not include private citizens not directed or controlled by a law enforcement agency, even though their efforts might aid in law enforcement.

Detention and questioning by department store security guards in connection with a suspected shoplifting was held not to require "*Miranda* warnings" in *People v. Frank* (1966), 52 Misc. 2d 266, 275 N. Y. Supp. 2d 570, and in

such items without search or undue restraint or in order to cause an arrest to be made by a police officer until a warrant can be obtained, detain such person in a reasonable manner for a reasonable length of time within the said mercantile establishment or the immediate vicinity thereof.

"Any police officer may, within a resonable time after such alleged unlawful taking has been committed, arrest without a warrant, any person he has probable cause for believing has committed such unlawful taking in a mercantile establishment."

*People* v. *Williams* (1967), 53 Misc. 2d 1086, 281 N. Y. Supp. 2d 251. A similar conclusion was reached in *People* v. *Wright* (1967), 249 Cal. App. 2d 692, 57 Cal. Reptr. 781, even though the security guard was employed by a governmental agency, a county hospital. In *Schaumberg* v. *State* (1967), 83 Nev. 372, 432 P. 2d 500, the questioning of an employee of a gambling casino in the manager's office while one of the casino's security guards waited outside was held not to require such warnings. The questioning of a suspected shoplifter by the manager of a grocery store was held not to require "*Miranda* warnings" in *State* v. *Masters* (1967), 261 Iowa 366, 154 N. W. 2d 133. A grocery store merchant's questioning of an apprehended shoplifter was held not to be a "custodial interrogation" within the meaning of *Miranda* in *State* v. *Valpredo* (1969), 75 Wash. 2d 368, 450 P. 2d 979. Similar holdings were made as to interrogation by private investigators in *State* v. *Hess* (1969), 9 Ariz. App. 29, 449 P. 2d 46; as to statements made to private citizens who had seized a suspected rapist and were holding him for the police in *Hubbard* v. *State* (1967), 2 Md. App. 364, 234 A. 2d 775, certiorari denied, 393 U. S. 889; as to admissions made by a defendant to armed private citizens who had apprehended him after he had shot at them in *State* v. *Kemp* (1967), 251 La. 591, 205 So. 2d 411; as to admissions made to an insurance investigator in *People* v. *Vlcek* (1969), 114 Ill. App. 2d 74, 252 N. E. 2d 377; and as to a student's oral confession of making a false fire alarm in response to a high school principal's questioning at the principal's office in *People* v. *Shipp* (1968), 96 Ill. App. 2d 364, 239 N. E. 2d 296.

In drawing a line of demarcation between questioning by governmental law enforcement personnel and questioning by private citizens, these cases not only have adhered to the restricted meaning of "custodial interrogation" employed in *Miranda*, but also are in accord with the rationale of *Burdeau* v. *McDowell* (1921), 256 U. S. 465, where a similar distinction was made as to the admissibility of evidence obtained by unlawful search and seizure.

In *In re Gault* (1967), 387 U. S. 1, 36, it was held that "there is no material difference" with respect to the right to counsel between adult and juvenile proceedings in which adjudication of delinquency is sought. Essentially, *Miranda* is premised on the concept that the right to counsel exists at the time of the "custodial interrogation" discussed therein. Concluding, as we have, that the right to the presence of counsel is not applicable to questioning or interrogation by private citizens, it would follow that a "waiver" thereof is not required. Thus, the issue of whether, in any event, a 13-year-old boy can make an effective "waiver" of his *"Miranda* rights" need not be decided in this case. Nor are we required to determine whether all of the *"Miranda* warnings" apply to a juvenile who has allegedly committed an act which, had it been committed by an adult, would have constituted a misdemeanor. See *State* v. *Pyle* (1969), 19 Ohio St. 2d 64, holding that *Miranda* was not applicable to misdemeanors, as presently defined in Ohio. But see *In re Gault, supra* (387 U. S. 1, 41), to the effect that any proceeding "to determine delinquency which may result in commitment to an institution" requires representation by counsel.

We do conclude, however, that where, pursuant to R. C. 2935.041, an employee of a merchant has detained a person whom he has probable cause to believe has unlawfully taken items offered for sale by the mercantile establishment, an admission or confession made during such detention is not rendered inadmissible by the failure of such employee to fully explain to such detained person those constitutional rights set forth in *Miranda*.

Moreover we conclude that even if it had been error to admit the testimony concerning defendant's admission, it was harmless error. Here, the same witness who testified as to the admission had also testified that he personally observed the defendant take the gloves. In finding the defendant to be delinquent, it is clear that the trial judge based his decision upon the testimony of the security officer that he saw him take the gloves. He stated:

"The court will find Erwin Bolan a delinquent as charged. I believe he took the gloves. This gentleman saw him take the gloves and I do adjudge him to be a delinquent."

In the light of this conclusion by the trial court, the additional testimony *by the same witness* as to the defendant's admission could not have actually contributed to the finding of delinquency.

In *Chapman* v. *California* (1967), 386 U. S. 18, the court concluded "that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."

*Chapman* placed the duty upon the appellate courts to determine whether a federal constitutional error can be held to be harmless, but limited the right to so hold to those cases where the court is "able to declare a belief that it is harmless beyond a reasonable doubt." See, also, *Harrington* v. *California* (1969), 395 U. S. 250.

Applying the principle of *Chapman* and *Harrington* to the instant case, we would conclude, in any event, that the alleged federal constitutional error in permitting the security guard to testify as to the admission made by the defendant was harmless beyond a reasonable doubt.

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and the judgment of the Juvenile Court is affirmed.

*Judgment reversed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, DUNCAN, CORRIGAN and STERN, JJ., concur.