O'Donnell, J.
*542 *1241 {¶ 1} The state of Ohio appeals from a judgment of the Eighth District Court of Appeals reversing the convictions of Demetrius Jackson for kidnapping, gross sexual imposition, and two counts of rape. The issue presented in this appeal is whether a social worker's statutory duty to cooperate and share information with law enforcement regarding a child abuse investigation renders the social worker an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution if the social worker interviews an alleged perpetrator.
*543 Facts and Procedural History
{¶ 2} On August 5, 2015, C.H., who at the time was 14 years of age, went to the home of N.J. and joined her sister, S.H., and her sister's friend, Demetrius Jackson, who also were there. C.H. went to sleep in an upstairs bedroom, and when Jackson woke her up and tried to lay down with her, she pushed him out of the bed and he left the room. However, he later returned and offered C.H. $200 a week if she would allow him to perform oral sex on her and would keep it secret. She refused, and Jackson then ripped her underwear off, performed oral sex on her, and choked her when she resisted. He also digitally penetrated her and had vaginal sex with her. She escaped and ran to a family member's nearby home. The police were called, and she was taken to a hospital where she was examined and treated. Police arrested Jackson and attempted to interrogate him but he refused to speak after being advised of his rights under Miranda v. Arizona , 389 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
{¶ 3} The incident was reported to the Cuyahoga County Division of Children and Family Services (''CCDCFS'') via a hotline phone call on the day of the incident, and the case was assigned to Tina Funfgeld, a sex abuse intake social worker assigned to the agency's sex abuse unit. Funfgeld contacted the police to conduct a joint interview with C.H., but police had already interviewed her, so Funfgeld conducted a separate interview. Separately, CCDCFS social worker and child advocate Holly Mack, who was "assigned to the county jail," interviewed Jackson on August 11, 2015, at the request of Funfgeld. Mack works "directly with incarcerated parents as well as alleged perpetrators that are in the jail," and one of her "primary job duties" is to interview alleged perpetrators when the agency receives referrals for abuse and neglect. Mack stated that when she meets with suspects, she identifies herself and advises them of the allegations, that anything they say "can be subpoenaed by the [c]ourts," and that it is up to them whether to continue the interview. During his interview, Jackson told Mack that he had consensual oral sex with C.H., whom he believed was at least 21 years of age, and that afterwards she requested money, which he refused to give her. He denied having vaginal sex with her.
{¶ 4} A grand jury indicted him on three counts of rape and additional counts of gross sexual imposition, importuning, felonious assault, and kidnapping with a sexual *1242 motivation specification. Jackson waived the right to a jury trial, and at a bench trial, his counsel objected to Mack's testimony about the statements Jackson had made to her because she questioned him "as an agent of the State and law enforcement" and failed to notify him of his Miranda rights. The court overruled the objection and allowed Mack to testify. As a result of that ruling, Jackson testified on his own behalf and claimed he only had consensual oral sex with C.H. *544 {¶ 5} The court dismissed the importuning and felonious assault charges and found Jackson not guilty of one of the counts of rape, but it found him guilty of the remaining two counts of rape, the gross sexual imposition charge, and the kidnapping charge with a sexual motivation specification. For purposes of sentencing, the court merged the gross sexual imposition offense with the kidnapping offense and therefore sentenced Jackson on two counts of rape and one count of kidnapping with the specification. The court imposed an aggregate 11 year prison term.
{¶ 6} Jackson appealed, claiming that the trial court violated his constitutional rights by allowing Mack to testify about his statements to her, that the court violated his Sixth Amendment rights by admitting hearsay statements made by C.H. to a police officer, and that his convictions were against the manifest weight of the evidence. In a split decision authored by Judge Eileen A. Gallagher, the appellate court reversed Jackson's convictions. The majority explained that pursuant to Miranda , "statements stemming from custodial interrogation of the defendant must be suppressed unless the defendant has been informed of his Fifth and Sixth Amendment rights before being questioned." 2016-Ohio-8144, 75 N.E.3d 922, ¶ 15. The majority further explained that Miranda only applies to admissions made to officers of the law or their agents, that a person must act "under the direction or control of a law enforcement agency" to qualify as an agent of law enforcement, and that based on the facts before it, Mack acted as an agent of law enforcement when she interrogated Jackson. Id. at ¶ 17-18. The majority concluded the direction or control element was
satisfied in this instance due to the formal procedure established by CCDCFS and local law enforcement for routinely conducting interrogations of defendants without providing Miranda warnings. These interrogations are proceeding under the direction, and for the benefit, of law enforcement pursuant to a "memorandum of understanding" required by Ohio law.
Id. at ¶ 18, quoting former R.C. 2151.421(F) and (J) (renumber as R.C. 2151.421(G) and (K) in 2016 Am.Sub.H.B. No. 433, effective Mar. 14, 2017). The majority further explained that former R.C. 2151.421(F) required a child advocate "not only to conduct an investigation in cooperation with law enforcement but also to submit a report of the advocate's investigation, in writing, to law enforcement." Id. at ¶ 20.
{¶ 7} The majority also noted that Mack was assigned to the jail and that one of her primary duties was to interview alleged perpetrators in abuse cases. Id. at ¶ 19. It could find "no legitimate purpose" for Mack's interview "other than to *545 directly assist the investigation of law enforcement pursuant to [former] R.C. 2151.421(F)." Id. at ¶ 21. The majority acknowledged Mack "may have been performing her customary duties as an investigator for CCDCFS" but stated that it was "problematic" that her "customary duties are designed to routinely *1243 violate the constitutional rights of defendants." Id. at ¶ 22.
{¶ 8} The majority held Mack violated Jackson's Fifth Amendment rights by subjecting him to custodial interrogation without Miranda warnings and violated his Sixth Amendment right to counsel by conducting the interrogation outside the presence of his attorney. Id. at ¶ 28-29.
{¶ 9} Judge Sean C. Gallagher dissented. He opined that Mack was not an agent of law enforcement because the record did not demonstrate that she acted at the direction, control, or behest of law enforcement and that the statutory duty "to cooperate with and submit a report to law enforcement does not, in itself, demonstrate that the child advocate acted as an agent of law enforcement." Id. , 2016-Ohio-8144, 75 N.E.3d 922, at ¶ 40, 43 (Gallagher, J., dissenting).
{¶ 10} The state appealed and presented one proposition of law:
A social worker's duty to cooperate and share information with law enforcement does not render the social worker an agent of law enforcement, under the Fifth and Sixth Amendments of the U.S. Constitution, where the social worker does not act at the direction, control, or behest of law enforcement.
Positions of the Parties
{¶ 11} The state contends that Miranda applies only to law enforcement officers or their agents, that it is undisputed that a social worker is not a law enforcement officer, and that a social worker's statutory duty to cooperate and share information with law enforcement with respect to a child abuse investigation does not transform the social worker into an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution. It argues that interviews of alleged perpetrators by social workers are "inherently less coercive than those addressed by Miranda " and "serve important interests related to the health and safety of children." It asserts that the proper inquiry for determining whether a social worker is an agent of law enforcement is whether the totality of the facts demonstrate the social worker acted at the direction, control, or behest of law enforcement and here, there is no evidence that Mack acted in such a manner when she interviewed Jackson.
*546 {¶ 12} Jackson maintains that the state's "entire argument rests on the faulty premise" that the requirements of Miranda apply only to law enforcement officers or their agents, and he relies on Estelle v. Smith , 451 U.S. 454, 101 S.Ct. 1866, 68 L.E.2d 359 (1981), and State v. Roberts , 32 Ohio St.3d 225, 513 N.E.2d 720 (1987), for the proposition that Miranda applies when a state actor subjects a defendant to custodial interrogation and "the totality of the circumstances warran[t] use of the procedural safeguards required by Miranda ." Jackson points out that courts in several jurisdictions have held Miranda applies to social workers employed by children services agencies, and he argues that social workers should be treated no differently from Internal Revenue Service agents, who must comply with Miranda pursuant to Mathis v. United States , 391 U.S. 1, 88 S.Ct. 1503, 20 L.E.2d 381 (1968). He claims it is "important to recognize" that Mack was a "member of a special unit" at CCDCFS that "collaborated with law enforcement," that she was "assigned to the county jail," and that her "only job-related duty was to interview 'alleged perpetrators' in the county jail," and that it is reasonable to assume that she possesses interrogation skills comparable to or exceeding those of most law enforcement officers. He also maintains that *1244 "there was both a formal and informal relationship between the agency and law enforcement which involved a significant level of coordination, cooperation, and sharing of information," and "the agency and law enforcement very much worked as a team in the investigation and prosecution of crimes against children." (Emphasis sic.)
Issue
{¶ 13} The issue presented on this appeal is whether Mack's statutory duty to cooperate and share information with law enforcement resulting from her interview with Jackson rendered her an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution.
Law and Analysis
{¶ 14} "The Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, states that '[n]o person * * * shall be compelled in any criminal case to be a witness against himself.' (Ellipsis sic and citation omitted.) State v. Graham , 136 Ohio St.3d 125, 2013-Ohio-2114, 991 N.E.2d 1116, ¶ 19. Pursuant to Miranda , "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444, 86 S.Ct. 1602, 16 L.E.2d 694.
{¶ 15} In State v. Watson , 28 Ohio St.2d 15, 275 N.E.2d 153 (1971), this court stated, "Inasmuch as custodial interrogation, as defined in Miranda * * * means *547 'questioning initiated by law enforcement officers after a person has been taken into custody,' the Miranda requirements do not apply to admissions made to persons who are not officers of the law or their agents * * *." Watson at paragraph five of the syllabus, quoting Miranda at 444, 86 S.Ct. 1602 ; see also State v. Bernard , 31 So.3d 1025, 1029 (La.2010) ( Miranda applies only if "the interrogation is conducted by a 'law enforcement officer' or someone acting as their agent"). And we have observed that other courts have recognized
that the duty of giving " Miranda warnings" is limited to employees of governmental agencies whose function is to enforce law , or to those acting for such law enforcement agencies by direction of the agencies ; * * * it does not include private citizens not directed or controlled by a law enforcement agency , even though their efforts might aid in law enforcement .
(Emphasis added.) State v. Bolan , 27 Ohio St.2d 15, 18, 271 N.E.2d 839 (1971).
{¶ 16} "The Sixth Amendment, applied to the States through the Fourteenth Amendment, guarantees that '[i]n all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence.' " (Ellipsis sic.) Kansas v. Ventris , 556 U.S. 586, 590, 129 S.Ct. 1841, 173 L.Ed.2d 801 (2009). In Ventris , the United States Supreme Court explained:
The core of this right has historically been, and remains today, "the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial." Michigan v. Harvey , 494 U.S. 344, 348, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990). We have held, however, that the right extends to having counsel present at various pretrial "critical" interactions between the defendant and the State, * * * including the *1245 deliberate elicitation by law enforcement officers (and their agents) of statements pertaining to the charge.
(Emphasis added.) Id.
{¶ 17} "[W]hether someone is acting as an agent of law enforcement is dependent upon the unique circumstances of each case." Bernard at 1033.
Children Services Agency
{¶ 18} R.C. 2151.421(G)(1) -formerly R.C. 2151.421(F)(1) -provides that generally, a public children services agency
*548 shall investigate, within twenty-four hours, each report of child abuse or child neglect that is known or reasonably suspected or believed to have occurred * * * that is referred to it under this section to determine the circumstances surrounding the injuries, abuse, or neglect * * *, the cause of the injuries, abuse, neglect, or threat, and the person or persons responsible. The investigation shall be made in cooperation with the law enforcement agency and in accordance with the memorandum of understanding prepared under division (K) of this section. A representative of the public children services agency shall, at the time of initial contact with the person subject to the investigation, inform the person of the specific complaints or allegations made against the person. * * *
* * * The public children services agency shall submit a report of its investigation, in writing, to the law enforcement agency.
{¶ 19} R.C. 2151.421(K) -formerly R.C. 2151.421(J) -addresses memoranda of understanding. R.C. 2151.421(K)(1) directs that a public children services agency "shall prepare a memorandum of understanding that is signed by" certain officials and organizations, such as the county juvenile court judge, law enforcement officers handling child abuse and neglect cases in the county, the county prosecutor, and the county humane society. The memorandum
shall set forth the normal operating procedure to be employed by all concerned officials in the execution of their respective responsibilities under this section * * * and shall have as two of its primary goals the elimination of all unnecessary interviews of children who are the subject of reports made pursuant to division (A) or (B) of this section and, when feasible, providing for only one interview of a child who is the subject of any report.
R.C. 2151.421(K)(2).
{¶ 20} In addition, the memorandum "shall include all of the following":
(a) The roles and responsibilities for handling emergency and nonemergency cases of abuse and neglect;
(b) Standards and procedures to be used in handling and coordinating investigations of reported cases of child abuse and reported cases of child neglect, methods to be used in interviewing the child who is the subject of the report and who allegedly was abused or neglected, and standards and procedures addressing the categories of persons who may interview the *549 child who is the subject of the report and who allegedly was abused or neglected.
*1246 R.C. 2151.421(K)(3).
{¶ 21} Although CCDCFS's memorandum of understanding is not part of the record in this case, nothing in R.C. 2151.421 or the record supports the conclusion that pursuant to it, Mack acted as an agent of law enforcement when she interviewed Jackson. Although R.C. 2151.421(G)(1) imposes a duty on a children services agency to cooperate with and provide information to law enforcement regarding child abuse investigations, it does not mandate that agency employees interview alleged perpetrators of child abuse at the direction or under the control of law enforcement. See also Ohio v. Clark , --- U.S. ----, 135 S.Ct. 2173, 2183, 192 L.E.2d 306 (2015) (mandatory child abuse reporting statutes "alone cannot convert a conversation between a concerned teacher and her student into a law enforcement mission aimed primarily at gathering evidence for a prosecution" for purposes of the Confrontation Clause).
{¶ 22} Thus, a social worker's statutory duty to cooperate and share information with law enforcement with respect to a child abuse investigation does not render the social worker an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution when the social worker interviews an alleged perpetrator unless other evidence demonstrates that the social worker acted at the direction or under the control of law enforcement.
{¶ 23} And here, the record contains no evidence that Mack acted as an agent of law enforcement when she interviewed Jackson. The only evidence of contact between CCDCFS and law enforcement about the investigation in this matter before Mack interviewed Jackson is Funfgeld's testimony that she contacted law enforcement to coordinate a joint interview of C.H., which is consistent with the statutory goal of a memorandum of understanding of eliminating unnecessary interviews of child victims. See R.C. 2151.421(K)(2). There is no evidence that law enforcement asked Mack to interview Jackson before or after the detective's failed attempt to interview him or that law enforcement influenced Mack's interview of Jackson in any way.
{¶ 24} Accordingly, the appellate court erred when it concluded that Mack acted as an agent of law enforcement in conducting an interview of Jackson.
Inapposite Authority
{¶ 25} Jackson's reliance on Mathis , Estelle , and Roberts is misplaced. In Mathis , the United States Supreme Court considered whether an IRS agent who questioned an individual in connection with a tax investigation while he was *550 serving a state prison sentence had to give the person Miranda warnings. 391 U.S. at 3-4, 88 S.Ct. 1503, 20 L.E.2d 381, fn. 2. Mathis rejected the government's attempt "to escape application of" Miranda on the grounds that the interview occurred "as part of a routine tax investigation where no criminal proceedings might even be brought" and that the defendant was not "put in jail by the officers questioning him, but was there for an entirely separate offense." Mathis at 4, 88 S.Ct. 1503. As the Supreme Court of Louisiana has noted, in Mathis , the court "was not called upon to decide whether the IRS employee was a 'law enforcement agent,' as the government apparently ceded that point." (Emphasis sic.) Bernard , 31 So.3d at 1030.
{¶ 26} In Estelle , the United States Supreme Court held that a state court violated the Fifth and Sixth Amendment rights of a defendant in a capital case when it ordered a psychiatric examination to determine his competency to stand trial, the psychiatrist interviewed the defendant in jail without advising him of his Miranda *1247 rights, and during sentencing, the court allowed the state to question the psychiatrist about statements the defendant made during the interview in order to establish his future dangerousness even though defense counsel was not notified in advance that the psychiatric examination would encompass that issue. 451 U.S. at 456-458, 461, 467-468, 470-471, 101 S.Ct. 1866, 68 L.E.2d 359. The Supreme Court concluded the fact that the defendant "was questioned by a psychiatrist designated by the trial court to conduct a neutral competency examination, rather than by a police officer, government informant, or prosecuting attorney, is immaterial" because when the psychiatrist testified at sentencing, "his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting." Id. at 467, 101 S.Ct. 1866. This case is distinguishable because it does not involve a court ordered examination, and the Supreme Court has observed that the "opinion in Estelle suggested that [its] holding was limited to the 'distinct circumstances' presented there," Penry v. Johnson , 532 U.S. 782, 795, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001), quoting Estelle at 466, 101 S.Ct. 1866.
{¶ 27} In Roberts , this court considered whether statements a probationer made to his probation officer while in custody without prior Miranda warnings were admissible in a subsequent criminal trial. 32 Ohio St.3d at 227, 513 N.E.2d 720. Although we observed that decisions in other jurisdictions were in conflict on the issue, noted that "[m]ost of these cases turn on whether a probation officer is a 'law enforcement officer' under Miranda ," Roberts , at 227, 513 N.E.2d 720 and concluded that the "better rule is followed in those jurisdictions which require a probation officer to give Miranda warnings prior to questioning" a probationer who is in custody, Roberts at 231, 513 N.E.2d 720, we did not specifically determine whether a probation officer is a law enforcement officer or agent. However, we noted that R.C. 2901.01(K) -now R.C. 2901.01(A)(11) -defines "law enforcement officer" to include an officer of the *551 state with a statutory duty to enforce laws and authority to arrest violators and that R.C. 2951.08 gives probation officers the authority to arrest a defendant during a period of probation, id. at 228, fn. 7, 513 N.E.2d 720, and we emphasized that a probationer has an obligation "to ' "report to" ' and ' "answer questions posed by a probation officer" ' " and is under " 'heav[y] psychological pressure to answer questions put by his probation officer, a figure of both authority and trust,' " id. at 230, 513 N.E.2d 720, quoting Marrs v. State , 53 Md.App. 230, 233, 452 A.2d 992 (1982), quoting United States v. Rea , 678 F.2d 382, 390 (2d Cir.1982). Here, there is no assertion that Mack possessed authority to make arrests, and the record does not demonstrate that Jackson and Mack had a relationship comparable to that of a probationer and probation officer.
{¶ 28} Accordingly, none of those cases support the position that Mack had an obligation to provide Jackson with Miranda warnings even though she was not an agent of law enforcement.
{¶ 29} And because Mack is not an agent of law enforcement, the appellate court also erred when it concluded the trial court violated the Fifth and Sixth Amendments, as applied to the states through the Fourteenth Amendment, in admitting her testimony.
Conclusion
{¶ 30} A social worker's statutory duty to cooperate and share information with law enforcement with respect to a child abuse investigation does not render the social worker an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution when the social worker interviews *1248 an alleged perpetrator unless other evidence demonstrates that the social worker acted at the direction or under the control of law enforcement. In this case, no evidence indicates that Mack acted at the direction or under the control of law enforcement when she interviewed Jackson.
{¶ 31} Accordingly, we reverse the judgment of the appellate court, and we remand this case to that court to consider the assignments of error it did not address.
Judgment reversed and cause remanded.
O'Connor, C.J., and French, Fischer, and DeWine, JJ., concur.
Kennedy, J., concurs in judgment only.
DeGenaro, J., dissents, with an opinion.