[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re L.G.*, Slip Opinion No. 2018-Ohio-3750.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3750

IN RE L.G.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re L.G.*, Slip Opinion No. 2018-Ohio-3750.]

*Appeal dismissed as having been improvidently accepted.*

(No. 2017-0877—Submitted July 31, 2018—Decided September 20, 2018.)

APPEAL from the Court of Appeals for Montgomery County,

No. 27296, 2017-Ohio-2781.

_____

{¶ 1} This cause is dismissed as having been improvidently accepted.

O'CONNOR, C.J., and FISCHER, DEWINE, and DEGENARO, JJ., concur.

O'DONNELL, J., dissents, with an opinion joined by FRENCH, J.

KENNEDY, J., dissents.

_____

**O'DONNELL, J., dissenting.**

{¶ 2} I respectfully dissent from the majority's decision to resolve this case by declaring that it was improvidently accepted. The Second District Court of

Appeals misapplied long-standing precedent of this court, which we recently followed in *State v. Jackson*, ___ Ohio St.3d ___, 2018-Ohio-2169, ___ N.E.3d ___, when it concluded that a school district's executive director of safety and security acted as an agent of law enforcement and had a duty to advise a student of his *Miranda* rights prior to questioning that student about a bomb threat even though the director initiated and conducted the interview without input from law enforcement. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694 (1966). By dismissing this case and not even issuing a "do not cite" directive, the majority allows an errant appellate court decision to stand and creates confusion regarding the requirement that an individual act at the direction or control of law enforcement to be an agent of law enforcement.

**Facts and Procedural History**

{¶ 3} On October 27, 2015, the Montgomery County Regional Dispatch Center received an anonymous telephone call claiming there was a bomb at Longfellow Alternative School. After the school was evacuated, police and Jamie Bullens, the executive director of safety and security for Dayton Public Schools, arrived at the school. Bullens, a retired Dayton Police Department detective, oversees the schools' resource officers, who are trained as peace officers, have authority to arrest on school grounds, and carry handcuffs but not weapons. However, Bullens is not a peace officer. School district policy directs that he work closely with police when a crime occurs on school grounds and formal charges may be warranted.

{¶ 4} Bullens met with Sergeant Keller, the supervisor on the scene for the Dayton Police Department. Bullens and Keller decided to have bomb sniffing dogs sweep the building; they found nothing. Then, Bullens and Keller decided to allow the students into the school gymnasium, where Bullens, in the presence of a uniformed officer, told the students that the Miami Valley Crime Stoppers Association was offering a $50 to $1,000 reward for information leading to the

person responsible for the bomb threat. The previous day, Bullens had received permission to offer such a reward in bomb threat cases from Detective Querubin, who ran the association, provided that any information gathered after offering the reward was given to law enforcement.

{¶ 5} After Bullens left the gymnasium, School Resource Officer Kerry Ivy and Principal Jack Johnson notified him that two individuals had come forward with information. Bullens spoke with the individuals in the cafeteria, and they implicated L.G., a student. Without consulting police, Bullens instructed Ivy to bring L.G. to the cafeteria, where Bullens questioned him without providing *Miranda* warnings. L.G. admitted to calling in the bomb threat. Although at least two uniformed Dayton Police officers were present in the cafeteria, they did not participate in the interview or direct the questioning in any way. After Bullens finished questioning L.G., one of the officers placed him under arrest.

{¶ 6} The next day, the Dayton Police Department filed a complaint alleging that L.G. was a delinquent child for committing the offense of inducing panic. L.G. moved to suppress his statements on the grounds that he had not been advised of his *Miranda* rights, and after a hearing, a magistrate granted the motion. The state objected to the magistrate's decision, arguing that *Miranda* did not apply, because L.G. was not in custody when Bullens questioned him and Bullens was not a law enforcement officer and did not act as an agent of law enforcement. The juvenile court overruled the objections and granted the motion to suppress.

{¶ 7} The state appealed, and the court of appeals affirmed in a divided decision. The majority concluded that L.G. was in custody when Bullens questioned him. In addition, relying on *State v. Bolan*, 27 Ohio St.2d 15, 271 N.E.2d 839 (1971), the majority acknowledged that it is well established that only law enforcement and those acting at the direction or control of law enforcement have a duty to give *Miranda* warnings. 2017-Ohio-2781, 82 N.E.3d 52, ¶ 20 (2d Dist.). It further acknowledged that Bullens testified that he "did not maintain his

status as a peace officer" and that "the Dayton police did not direct his questioning of L.G., nor did he speak with police officers between the time that L.G. was identified and when L.G. was questioned." *Id.* at ¶ 21.

{¶ 8} Nonetheless, the court of appeals' majority held that the juvenile court "reasonably concluded that, when viewing the totality of the circumstances, Bullens was acting in conjunction with law enforcement officers, such that *Miranda* warnings were required." *Id.* at ¶ 22. It noted the juvenile court's reliance on the fact that Bullens and Sergeant Keller had made joint decisions regarding having dogs check the building and allowing the students back into the school, that Bullens offered a reward based on his permission from Detective Querubin, that Bullens gave an order to a school resource officer to retrieve L.G. from the gymnasium, and that Bullens questioned L.G. with at least two armed, uniformed officers nearby. *Id.*

{¶ 9} The dissenting court of appeals jurist opined that the evidence did not support the conclusion that L.G. was in custody during the interview or that Bullens acted as an agent of law enforcement in conducting the interview. *Id.* at ¶ 29-30 (Hall, P.J., dissenting).

{¶ 10} The state appealed and presented one proposition of law:

The Protections of the United States Constitution only apply where there is action by the State. The Fifth Amendment protection against self-incrimination does not apply to interviews conducted by private citizens.

**Law and Analysis**

{¶ 11} "The Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, states that '[n]o person * * * shall be compelled in any criminal case to be a witness against himself

* * *.' " (Ellipses sic and citation omitted.) *State v. Graham*, 136 Ohio St.3d 125, 2013-Ohio-2114, 991 N.E.2d 1116, ¶ 19. Pursuant to *Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444.

{¶ 12} In *State v. Jackson*, ___ Ohio St.3d ___, 2018-Ohio-2169, ___ N.E.3d ___, this court recently reiterated:

In *State v. Watson*, 28 Ohio St.2d 15, 275 N.E.2d 153 (1971), this court stated, "Inasmuch as custodial interrogation, as defined in *Miranda* * * * means 'questioning initiated by law enforcement officers after a person has been taken into custody,' the *Miranda* requirements do not apply to admissions made to persons who are not officers of the law or their agents * * *." *Id.* at paragraph five of the syllabus, quoting *Miranda* at 444; *see also State v. Bernard*, 31 So.3d 1025, 1029 (La.2010) (*Miranda* applies only if "the interrogation is conducted by a 'law enforcement officer' or someone acting as their agent"). And we have observed that other courts have recognized "that the duty of giving '*Miranda* warnings' is limited to *employees of governmental agencies whose function is to enforce law, or to those acting for such law enforcement agencies by direction of the agencies*; * * * it does not include private citizens *not directed or controlled by a law enforcement agency, even though their efforts might aid in law enforcement*." (Emphasis added.) *State v. Bolan*, 27 Ohio St.2d 15, 18, 271 N.E.2d 839 (1971).

(Ellipses sic.) *Id.* at ¶ 15.

**{¶ 13}** In *Jackson*, we considered whether a social worker was an agent of law enforcement during an interview of an alleged perpetrator of child abuse at the county jail. *Id.* at ¶ 1-3. We held:

> A social worker's statutory duty to cooperate and share information with law enforcement with respect to a child abuse investigation does not render the social worker an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution when the social worker interviews an alleged perpetrator *unless other evidence demonstrates that the social worker acted at the direction or under the control of law enforcement.*

(Emphasis added.) *Id.* at syllabus. In concluding the social worker in that case was not acting as an agent of law enforcement, we highlighted the absence of evidence "that law enforcement asked [the social worker] to interview [the alleged perpetrator] before or after" a failed interview attempt by law enforcement and the absence of evidence that "law enforcement influenced [the social worker's] interview * * * in any way." *Id.* at ¶ 23.

**{¶ 14}** Here, the evidence does not support the conclusion that Bullens was a member of law enforcement or an agent of law enforcement at the time of the interview, so the court of appeals erred in concluding he had a duty to provide L.G. with *Miranda* warnings. Bullens is not a peace officer, and as in *Jackson*, any duty Bullens had to cooperate and share information with law enforcement, pursuant to either district policy or the agreement with the Miami Valley Crime Stoppers Association, is not dispositive of whether he was an agent of law enforcement. The fact that Bullens made *joint decisions* with police about using bomb sniffing dogs and moving the students to the gymnasium contradicts the conclusion that he acted

6

at *the direction or control of law enforcement* during this incident. Importantly, as in *Jackson*, there is no evidence law enforcement requested the interview or influenced it in any way. Bullens made the decision to interview L.G. without any discussion with law enforcement, and there is no evidence the officers who were present during the interview directed or controlled it. Indeed, as the executive director of safety and security for the school district, Bullens was acting in furtherance of his duty to ensure the safety of the students, a wholly different focus from the prosecution of L.G.

**Conclusion**

{¶ 15} For the foregoing reasons, I dissent from the majority's decision to dismiss this appeal as having been improvidently accepted. Instead, I would reverse the judgment of the court of appeals because it is contrary to this court's precedent and remand to the juvenile court for further proceedings.

FRENCH, J., concurs in the foregoing opinion.

––––––––––––––––––

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Christina E. Mahy and Andrew T. French, Assistant Prosecuting Attorneys, for appellant, the state of Ohio.

Theresa G. Haire, Montgomery County Public Defender, and Michael E. Deffet, Assistant Public Defender, for appellee, L.G.

Marsha L. Levick; Brooke M. Burns; Rickell Howard; and Erin Davies, urging affirmance for amici curiae Juvenile Law Center, the Office of the Ohio Public Defender, Children's Law Center, Inc., Education Law Center–PA, Juvenile Justice Coalition, National Juvenile Defender Center, and Schubert Center for Children's Studies.

Russell S. Bensing, urging affirmance for amicus curiae Ohio Association of Criminal Defense Lawyers.

––––––––––––––––––