[Cite as *In re P.B.*, 2019-Ohio-4502.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY


In re P.B.                                        Court of Appeals No. F-19-001

Trial Court No. 2171217


<u>**DECISION AND JUDGMENT**</u>

Decided: November 1, 2019

* * * * *

Scott A. Haselman, Fulton County Prosecuting Attorney,
for appellee.

Alan J. Lehenbauer, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Appellant, P.B., appeals the December 17, 2018 judgment of the Fulton County Court of Common Pleas, Juvenile Division, adjudicating him delinquent for committing attempted gross sexual imposition in violation of R.C. 2907.05(A)(4) and 2923.02. For the following reasons, we affirm.

# I. Background and Facts

{¶ 2} On November 15, 2017, Detective Aaron Gladieux of the Fulton County Sheriff's Office ("FCSO") filed a complaint in the juvenile court alleging that P.B., then 15 years old, committed gross sexual imposition against a victim who was less than 13 years old in violation of R.C. 2907.05(A)(4), which would be a third-degree felony if committed by an adult.

{¶ 3} P.B.'s attorney filed a motion to suppress statements that P.B. made to Christina DeSilvis, a caseworker with Lucas County Children Services ("LCCS"). He argued that DeSilvis acted as an agent of the state when she interviewed him, which required her to give him *Miranda* warnings before questioning him. Because DeSilvis did not provide *Miranda* warnings, P.B. argued, his statements were not admissible at trial. Appellee, the state of Ohio, responded that DeSilvis was not required to give P.B. *Miranda* warnings because she was not a state agent. Rather, the state argued that DeSilvis was fulfilling her statutory duties by interviewing P.B., not acting at the direction, under the control, or at the behest of law enforcement.

{¶ 4} The juvenile court did not hold a hearing on P.B.'s motion to suppress. Instead, the parties submitted a stipulation of facts and asked the court to decide the motion on the stipulation and the parties' memoranda. The stipulation included one exhibit, a letter dated November 1, 2017, from DeSilvis to P.B.'s mother. The parties' stipulation provides the following facts.

2.

{¶ 5} LCCS received a report of possible sexual abuse in October 2017 that named P.B. as the alleged perpetrator. The precise date of this report, however, is not clear. DeSilvis's letter states that LCCS received the report on October 15, 2017, while the written stipulation states that the report was received on October 20, 2017.

{¶ 6} After receiving the report, DeSilvis contacted the FCSO to report the allegations and to have the FCSO interview P.B. The parties' stipulation, however, does not specify how—or when—DeSilvis reported the allegations to the FCSO.

{¶ 7} On November 1, 2017, P.B.'s mother informed Gladieux that she had contacted an attorney and that P.B. would not participate in an interview with Gladieux.

{¶ 8} That same day—November 1, 2017—DeSilvis sent P.B.'s mother a letter notifying her that P.B. was named as the alleged perpetrator of sexual abuse against a child victim. In her letter, DeSilvis stated that "[a]s part of the investigation process, I am required to discuss these allegations with you and your son." DeSilvis also proposed a date, time, and location for an interview with P.B., but offered to reschedule if the time was inconvenient or if P.B.'s mother preferred that DeSilvis come to her home.

{¶ 9} Sometime after, P.B.'s mother spoke with DeSilvis and told her that P.B. had an attorney who advised P.B. not to speak with law enforcement or the caseworker about the matter. In response, DeSilvis told P.B.'s mother that she was mandated to meet with P.B. and his mother. P.B.'s mother did not believe that they had a choice about meeting with DeSilvis.

3.

{¶ 10} DeSilvis came to P.B.'s home to interview him. P.B.'s mother again told DeSilvis that P.B. had an attorney. Regardless, DeSilvis proceeded to question P.B. and his mother. No one in law enforcement told DeSilvis what questions to ask in the interview. During the interview, DeSilvis advised P.B.'s mother that DeSilvis would be turning her notes over to law enforcement, and DeSilvis eventually sent her notes to the FCSO.

{¶ 11} Based on these stipulated facts, the juvenile court denied P.B.'s motion to suppress. The court determined that nothing in the record demonstrated that DeSilvis acted at the direction or under the control of Gladieux. Thus, the court concluded, because DeSilvis was not acting at the behest of law enforcement, the constraints of the Fifth and Sixth Amendments to the United States Constitution that applied to Gladieux did not apply to her.

{¶ 12} Following the denial of his motion to suppress, P.B. agreed to plead no contest to an amended charge of attempted gross sexual imposition in violation of R.C. 2907.05(A)(4) and 2923.02, which would be a fourth-degree felony if committed by an adult. The court accepted the plea and adjudicated P.B. delinquent.

{¶ 13} Following disposition, P.B. appeals, raising one assignment of error:

THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS STATEMENTS MADE BY APPELLANT TO A JOB AND FAMILY SERVICES CASE WORKER AFTER APPELLANT INVOKED HIS RIGHT TO COUNSEL.

4.

## II. Law and Analysis

{¶ 14} In his assignment of error, P.B. argues that DeSilvis was working as an agent of the state when she interviewed P.B. and was required to honor P.B.'s exercise of his rights to counsel and to remain silent. Instead, he claims, DeSilvis ignored his rights and interviewed him in contravention of the Fifth and Sixth Amendments to the United States Constitution. The state responds that DeSilvis was not an agent of law enforcement, so her questioning of P.B. was appropriate.

{¶ 15} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court acts as the trier of fact at a suppression hearing by weighing the evidence and determining the credibility of the witnesses. *Id.* Although we must accept any findings of fact that are supported by competent, credible evidence, we conduct a de novo review to determine whether the facts satisfy the applicable legal standard, and this independent review is done without deference to the trial court. *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *Burnside* at ¶ 8; *State v. Jones-Bateman*, 6th Dist. Wood Nos. WD-11-074 and WD-11-075, 2013-Ohio-4739, ¶ 9.

{¶ 16} The Supreme Court of Ohio's decision in *State v. Jackson*, 154 Ohio St.3d 542, 2018-Ohio-2169, 116 N.E.3d 1240, is controlling in this case. In *Jackson*, the Supreme Court evaluated whether a social worker employed by a county children services agency was an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution. The court concluded that a social

5.

worker's statutory duty under R.C. 2151.421(G) to share certain information with law enforcement—*without more*—was insufficient to render the social worker an agent of law enforcement who would be subject to the constraints of the Fifth and Sixth Amendments. *Id.* at syllabus.

{¶ 17} The social worker in *Jackson*, who was employed by the county children services agency, was assigned to the county jail where one of her primary job duties was interviewing in-custody suspects about alleged child abuse. *Id.* at ¶ 3. When the social worker interviewed Jackson—who had previously invoked his right to remain silent when questioned by the police—Jackson admitted to performing sexual acts on the victim. *Id.* Jackson sought to have his statements to the social worker suppressed because she was acting as an agent of law enforcement but did not provide him with *Miranda* warnings prior to interviewing him. *Id.* at ¶ 4.

{¶ 18} After noting that R.C. 2151.421(G) requires a children services agency to, among other things, investigate reports of child abuse in cooperation with law enforcement and provide written reports of its investigations to law enforcement, the Supreme Court held that

> [a]lthough R.C. 2151.421(G)(1) imposes a duty on a children services agency to cooperate with and provide information to law enforcement regarding child abuse investigations, it does not mandate that agency employees interview alleged perpetrators of child abuse at the direction or under the control of law enforcement. * * * Thus, a social

6.

worker's statutory duty to cooperate and share information with law enforcement with respect to a child abuse investigation does not render the social worker an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution when the social worker interviews an alleged perpetrator *unless other evidence demonstrates that the social worker acted at the direction or under the control of law enforcement.* (Emphasis added.)

*Jackson* at ¶ 21-22.

{¶ 19} The court went on to conclude that the social worker was not acting as an agent of law enforcement (and therefore was not required to provide *Miranda* warnings) because there was "no evidence that law enforcement asked [the social worker] to interview Jackson before or after the detective's failed attempt to interview him or that law enforcement influenced [the social worker's] interview of Jackson in any way." *Id.* at ¶ 23. Put another way, "as long as law enforcement keeps an arm length's [sic] distance from [the children services agency] during its investigative stage, then the [agency] worker will not be classified as law enforcement; thus, no constitutional safeguards need to be implemented to protect an alleged perpetrator's rights." *In re M.H.*, 8th Dist. Cuyahoga No. 105742, 2018-Ohio-4848, ¶ 51 (Keough, J., concurring).

{¶ 20} Similarly, in this case, the parties' stipulation of facts—which was the only evidence before the juvenile court—does not contain "other evidence" demonstrating that DeSilvis acted at the direction or under the control of law enforcement. Indeed, the

7.

parties' stipulation contains barely any facts that address the relevant issue—i.e., whether DeSilvis acted "at the direction or under the control of law enforcement," *Jackson* at ¶ 22—other than the stipulated fact that DeSilvis "was not advised by law enforcement as to what questions to ask relative to the interview of the child." That fact supports the trial court's determination that DeSilvis was not acting at the direction or under the control of law enforcement. Although DeSilvis sent her letter to P.B.'s mother on November 1, 2017—which is the same date that P.B.'s mother refused to allow the FCSO to interview P.B.—the coincidental timing of these occurrences, standing alone, is not enough to demonstrate that Gladieux asked DeSilvis to interview P.B. Simply put, there is nothing in the record—other than pure conjecture—that DeSilvis was acting as an agent of the FCSO when she interviewed P.B. We therefore find that DeSilvis was not required to honor P.B.'s Fifth and Sixth Amendment rights. *Id.* at syllabus.

{¶ 21} Moreover, *even if* we assume that DeSilvis was acting as a state agent when she interviewed P.B., the parties' stipulation is devoid of sufficient facts to establish that DeSilvis's interview of P.B. was a custodial interrogation to which *Miranda* would apply. "A custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, ¶ 9, quoting *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). To be considered "in custody" for *Miranda* purposes, the totality of the circumstances must show that a reasonable person in the defendant's position would understand that he

8.

was not free to leave the situation or end the interaction. *State v. Gumm*, 73 Ohio St.3d 413, 429, 653 N.E.2d 253 (1995), citing *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *State v. Scott*, 6th Dist. Sandusky No. S-15-012, 2016-Ohio-1480, ¶ 55. "*Miranda* warnings are not required simply because the questioning takes place in a coercive atmosphere." *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 26, citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

{¶ 22} Courts consider several factors when determining if a person was in custody, including: (1) the location of the questioning, (2) the duration of the questioning, (3) statements made during the interview, (4) the presence or absence of physical restraints, and (5) whether the individual was released at the end of the interview. *State v. Nelson*, 6th Dist. Lucas No. L-15-1190, 2016-Ohio-7115, ¶ 22, citing *Howes v. Fields*, 565 U.S. 499, 509, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012). A juvenile's age may be taken into consideration if his age was known to the questioner or would have been objectively apparent to a reasonable questioner. *In re R.S.*, 3d Dist. Paulding No. 11-13-10, 2014-Ohio-3543, ¶ 18, citing *J.D.B. v. North Carolina*, 564 U.S. 261, 277, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011).

{¶ 23} Based on the stipulation of facts, we know that DeSilvis's interview of P.B. took place at P.B.'s house with P.B.'s mother present and that P.B.'s mother believed that she did not have a choice about meeting with DeSilvis. We presume that P.B. was not physically restrained during the interview, that he was released after the interview, and

9.

that DeSilvis knew that P.B. was 15 years old.  We do not know how long the interview lasted or what statements P.B. made during the interview.  Based on this very limited information, we cannot say that a reasonable person in P.B.'s position would have believed that he was not free to leave the situation or terminate the interview with DeSilvis.  *See M.H.*, 8th Dist. Cuyahoga No. 105742, 2018-Ohio-4848, ¶ 32-34 (finding that a 13-year-old was not in custody during a 40-minute interview with a social worker that happened at social services office while mother was in a separate room).

{¶ 24} Finally, we note that a suppression hearing was not held in this case. Typically, "[a] trial court *must* hold a suppression hearing if the motion meets Crim.R. 47's minimum standards."  (Emphasis added.)  *Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, at ¶ 9.  That is, the trial court must hold a hearing when the motion "state[s] the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided."  *State v. Shindler*, 70 Ohio St.3d 54, 636 N.E.2d 319 (1994), syllabus.  Although P.B.'s motion to suppress (including the accompanying memorandum in support) was barely one page long and contained mostly generic assertions that P.B.'s rights were violated, we nonetheless find that the motion was sufficient to compel a hearing because "*Shindler* does not require that a defendant set forth the basis for suppression in excruciating detail.  Instead, the question is whether the language used provides sufficient notice to the state."  *Codeluppi* at ¶ 13. If the trial court had held a suppression hearing, it could have heard sworn testimony relating to the (many) unanswered questions in this case.  However, because P.B. agreed

10.

to submit his motion to the court on the stipulation of facts, he invited any error in that regard. *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27 ("Under [the invited-error] doctrine, a party is not entitled to take advantage of any error that he himself invited or induced the court to make.").

{¶ 25} In sum, there was no evidence before the trial court that DeSilvis was acting at the direction or under the control of law enforcement or that law enforcement told her what to ask P.B. DeSilvis's statutory duties to investigate and report, standing alone, are insufficient to show that DeSilvis was an agent of law enforcement and was required to abide by the same rules as law enforcement. *Jackson*, 154 Ohio St.3d 542, 2018-Ohio-2169, 116 N.E.3d 1240, at syllabus. Because DeSilvis was not acting as an agent of law enforcement and was not required to honor P.B.'s Fifth and Sixth Amendment rights, we find that the juvenile court did not err by denying P.B.'s motion to suppress. Moreover, even if DeSilvis was acting as a state agent, the record contains insufficient evidence from which we could conclude that DeSilvis's interview was a custodial interrogation under *Miranda*.

{¶ 26} P.B.'s assignment of error is not well-taken.

### III. Conclusion

{¶ 27} Based on the foregoing, the December 17, 2018 judgment of the Fulton County Court of Common Pleas, Juvenile Division, is affirmed. P.B. is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.